1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11

SURFACE ART, INC.,

CASE NO. 2:24-cv-00924-TL

12

Plaintiff,

ORDER ON MOTION TO DISMISS

v.

13

TESSERAE TECHNOLOGIES, LLC, et
al.,

14
15

Defendants.

16

17          This matter is before the Court on the Motion of Defendants Tesserae Technologies,

18    LLC, and David Drishpon (together, "Tesserae Defendants") to Dismiss Plaintiff's Second

19    Amended Complaint ("SAC") (Dkt. No. 38). Dkt. No. 40. Having reviewed Tesserae

20    Defendants' motion, Plaintiff's response (Dkt. No. 41), Tesserae Defendants' reply (Dkt. No.

21    42), and the relevant record, the Court GRANTS IN PART and DENIES IN PART Tesserae Defendants'

22    motion.

23

24

I.    BACKGROUND

A.    **Factual Background**

1.    **The Parties**

Plaintiff Surface Art, Inc., is a Washington corporation based in Kent, Washington. Dkt. No. 38 ¶ 1. Plaintiff is a "family-owned distributor of tile and tile-related products . . . serv[ing] customers across the Western United States." *Id.* ¶ 15.

Defendant Tesserae Technologies, LLC ("Tesserae"), is a limited liability company ("LLC") based in Georgia. *Id.* ¶ 2. Defendant David Drishpon "was and is the CEO of Tesserae." *Id.* ¶ 3. Defendant Erpizo, LLC ("Erpizo"), is an LLC based in Texas. *Id.* ¶ 4. Defendant Mark Spears was the executive vice president of Defendant Tesserae and is also CEO of Defendant Erpizo; Defendant Spears resides in Texas. *Id.* ¶ 5. Plaintiffs allege that Defendant Spears formed Defendant Erpizo in 2023, using Defendant Tesserae's assets. *Id.* Only Defendants Tesserae and Drishpon are the subjects of the instant motion to dismiss. *See generally* Dkt. No. 40.

2.    **The Contract between Plaintiff and Defendant Tesserae**

On or about August 16, 2022, Plaintiff and Defendant Tesserae entered into a contract, under which Defendant Tesserae "agreed to provide [enterprise resource planning ('ERP')] software and implementation for Plaintiff through its solution developer partner, Nextworld." Dkt. No. 38 ¶ 18. Nextworld is not a party to this lawsuit. As Defendant Tesserae's CEO, Defendant Drishpon signed the contract for Defendant Tesserae. *See* Dkt. No. 40-1 at 11; Dkt. No. 38 ¶ 18.

The specific terms of the contract obliged Defendant Tesserae to "use its best efforts to provide . . . certain application software and implementation at the rates and under the terms and conditions described" in the contract. Dkt. No. 40-1 at 3. Plaintiff understood that this "certain

application software" was ERP software that would be a "technology based platform" to facilitate Plaintiff's "material inventory, samples, accounting, and other crucial foundational elements of [its] business as a tile and flooring distributor." Dkt. No. 38 ¶ 19. The contract included an integration clause, by which the four corners of the contract "constitute[d] the entire Agreement between the Parties" and "supersede[d] all prior agreements and understandings, both oral and written, with respect to the subject matter" of the contract. Dkt. No. 40-1 at 10.

Plaintiff paid for Defendant Tesserae's services indirectly. The cost of Defendant Tesserae's services to Plaintiff was $414,696.22, which Plaintiff financed through a 33-month lease agreement with non-party Encore Leasing Group ("Encore"). Dkt. No. 38 ¶¶ 6, 23, 24. On or about February 10, 2023, Encore paid Defendant Tesserae the entire amount that Plaintiff owed Defendant Tesserae, and Plaintiff began making monthly payments to Encore of $13,995.00. *Id.* ¶ 23–25. As of June 2024, when Plaintiff originally filed this civil action, Plaintiff had paid Encore $276,585; Plaintiff still owed Encore $315,685 and was continuing to remit monthly payments. *Id.* ¶ 25.

Rather than provide the promised "technology based platform," Defendant Tesserae delivered to Plaintiff a "proof of concept." *Id.* ¶ 28. This "concept" featured "limited execution and no practical functionality." *Id.* Moreover, the "accounting services provided by Tesserae were not in compliance with generally accepted accounting procedures (GAAP)." *Id.* ¶ 42. Defendant Tesserae maintains that "proof of concept" was all it contracted for with Plaintiff. *Id.* ¶ 30. Plaintiff, in contrast, asserts that it "agreed to pay the Contract Cost for a detailed and revolutionary platform to handle its finance, sample and inventory management." *Id.* ¶ 31. Plaintiff asserts that, because "the ERP software provided by [Defendant Tesserae] has never worked correctly, [Plaintiff] is now forced to pay the Encore Lease and simultaneously pay for reimplementation of its old ERP system, which has cost over $42,000 to date." *Id.* ¶ 41. Plaintiff

1    was also "forced to rebuild financial statements from scratch and obtain verification and auditing

2    work to resolve the accounting mess that Tesserae left behind, at a cost of some $8,640. *Id.* ¶ 43.

3    Plaintiff asserts that Defendant Tesserae "was fully compensated as agreed in the Contract," and

4    that Plaintiff "has complied with all material terms in the Contract." *Id.* ¶ 32.

5         **3.    Defendant Tesserae's Dissolution**

6         On or about October 13, 2023, Nextworld, Defendant Tesserae's "solution development

7    partner," terminated its relationship with Defendant Tesserae. *Id.* ¶ 40. Nextworld then advised

8    Plaintiff that it would no longer provide any services to Plaintiff as of January 14, 2024. *Id.* In

9    December 2023, Defendant Tesserae ceased its business operations. *Id.* ¶ 43. In an undated letter

10   to Plaintiff sent in December 2023, Defendant Drishpon advised Plaintiff that Defendant

11   Tesserae could no longer operate as a going concern. *Id.* Defendant Drishpon wrote that

12   "Tesserae Technologies LLC made the difficult decision this week to cease its business

13   operations effective immediately." *Id.* Defendant Drishpon continued, "Tesserae has been

14   operating at a loss for the last few years, and with recent business setbacks, it is no longer

15   feasible for it to operate as a going concern." *Id.*

16        Plaintiff alleges that Defendants Drishpon, Spears, and Tesserae "worked together to

17   move all viable assets from Tesserae to Erpizo, then abruptly closed Tesserae's doors in

18   December 2023." *Id.* ¶ 44. This was, alleges Plaintiff, "an intentional and calculated effort to

19   preserve [Defendant Tesserae's] assets and shield them from liability." *Id.* ¶ 47. Moreover, the

20   transfer of assets from Defendant Tesserae to Defendant Erpizo benefitted Defendant Erpizo and

21   its "sole member," Defendant Spears. *Id.* ¶ 46; *see id.* ¶ 13c. Plaintiff alleges that Defendants

22   "Spears, Drishpon, and Erpizo profited from the $414,000 [that] Tesserae received under the

23   Encore Lease funded by Plaintiff, and were able to market themselves and their companies with

24   those funds." *Id.* ¶ 129.

1    **B.    Procedural Background**

2        On June 26, 2024, Plaintiff filed a complaint against Defendants Tesserae, Drishpon,

3    Erpizo, and 50 unidentified Doe Defendants. Dkt. No. 1. The complaint pleaded six causes of

4    action, including breach of contract, breach of the covenant of good faith and fair dealing,

5    contractual indemnification, negligent representation, negligence, and unfair competition in

6    violation of the Washington Consumer Protection Act ("WCPA" or "CPA"). *Id.* ¶¶ 31–82. On

7    September 6, 2024, Tesserae Defendants filed a motion to dismiss. Dkt. No. 18.

8        On September 26, 2024, while Tesserae Defendants' motion to dismiss was pending,

9    Plaintiff filed a First Amended Complaint ("FAC") as a matter of course. Dkt. No. 21; *see* Fed.

10   R. Civ. P. 15(a)(1)(B). The FAC added Defendant Spears to the roster of defendants and added

11   two new causes of action: intentional misrepresentation and unjust enrichment. Dkt. No. 21 ¶¶ 5,

12   107–127. The FAC also rendered moot the pending motion to dismiss the original complaint. *See*

13   Fed. R. Civ. P. 15(a)(1)(B); *Valadez-Lopez v. Chertoff*, 656 F.3d 851, 857 (9th Cir. 2011) (noting

14   that an amended complaint "supersedes the original" and renders it "thereafter as non-existent");

15   *see also* Dkt. No. 34 (denying motion to dismiss as moot).

16       On October 10, 2024, Tesserae Defendants filed a motion to dismiss Plaintiff's FAC.

17   Dkt. No. 27. On December 18, 2024, instead of ruling on the motion, the Court *sua sponte*

18   dismissed the FAC without prejudice, finding that "at th[at] stage in the proceedings, Plaintiff's

19   obligation to establish subject-matter jurisdiction remain[ed] unfulfilled." Dkt. No. 35 at 3. The

20   Court determined that the FAC "d[id] not plead the citizenship of all members of the defendant

21   LLCs and, therefore, d[id] not adequately establish th[e] Court's subject-matter jurisdiction." *Id.*

22   at 2; *see* 28 U.S.C. § 1332(a)(1); *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899

23   (9th Cir. 2006) ("[A]n LLC is a citizen of every state of which its owners/members are

24   citizens."). The Court gave Plaintiff leave to file a second amended complaint ("SAC") and

1    ordered Defendants Tesserae and Erpizo—the LLCs—to file amended corporate disclosure

2    statements under Federal Rule of Civil Procedure 7.1 and Local Civil Rule 7.1. Dkt. No. 35 at 4.

3    Defendants Tesserae and Erpizo subsequently filed their amended corporate disclosures. Dkt.

4    Nos. 36, 37.

5         On January 21, 2025, Plaintiff filed a SAC. Dkt. No. 38. On February 4, 2025,

6    Defendants Tesserae and Drishpon filed the instant motion to dismiss. Dkt. No. 40. Plaintiff

7    responded on February 25, 2025 (Dkt. No. 41), and Tesserae Defendants replied on March 4,

8    2025 (Dkt. No. 42).

9                              **II.    LEGAL STANDARD**

10        A defendant may seek dismissal when a plaintiff fails to state a claim upon which relief

11   can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion to dismiss, the

12   Court takes all well-pleaded factual allegations as true and considers whether the complaint

13   "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

14   (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare

15   recitals of the elements of a cause of action, supported by mere conclusory statements," are

16   insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content

17   that allows the court to draw the reasonable inference that the defendant is liable for the

18   misconduct alleged." *Iqbal*, 556 U.S. at 672. When reviewing a dismissal pursuant

19   to Rule 12(b)(6), "we accept as true all facts alleged in the complaint and construe them in the

20   light most favorable to plaintiff[ ], the non-moving party." *DaVinci Aircraft, Inc. v. United*

21   *States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (alteration in original) (quoting *Snyder & Assocs.*

22   *Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).

23        Under Rule 9(b), a defendant may seek dismissal where a plaintiff fails to plead "with

24   particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Vess v.*

1    *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (deeming a motion to dismiss under

2    Rule 9(b) "the functional equivalent" of a motion to dismiss under Rule 12(b)(6) and thus

3    treating dismissal under both rules "in the same manner"). Under Rule 9(b), "[m]alice, intent,

4    knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P.

5    9(b), but a plaintiff must normally plead "'the who, what, when, where, and how' of the

6    misconduct charged," *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting

7    *Vess*, 317 F.3d at 1106)).

8                        **III.    DISCUSSION**

9    **A.    Incorporation by Reference**

10            On a motion to dismiss, a court may "consider certain materials—documents attached to

11   the complaint, documents incorporated by reference in the complaint, or matters of judicial

12   notice—without converting the motion to dismiss into a motion for summary judgment." *United*

13   *States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). Under incorporation by reference, a court

14   may "consider documents in situations where the complaint necessarily relies upon a document

15   or the contents of the document are alleged in a complaint, the document's authenticity is not in

16   question and there are no disputed issues as to the document's relevance." *Coto Settlement v.*

17   *Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). A document may be incorporated by reference

18   "if the plaintiff refers extensively to the document or the document forms the basis of the

19   plaintiff's claim." *Ritchie*, 342 F.3d at 908.

20            Here, the Court finds that the SAC "refers extensively" to Plaintiff's contract with

21   Defendant Tesserae such that the contract is incorporated by reference into the SAC. The

22   contract forms the basis of Plaintiff's first, second, third, fourth, fifth, and seventh causes of

23   action. *See* Dkt. No. 38 ¶¶ 51, 59, 70, 80, 93, 111. Plaintiff further discusses or mentions the

24   contract in pleading its sixth and eighth causes of action. *See id.* ¶¶ 105, 124. Tesserae

1   Defendants attach the contract to their motion. Dkt. No. 40-1. They refer to and quote from it

2   extensively (*see, e.g.*, Dkt. No. 40 at 16–18), and Plaintiff discusses the contract in its response

3   (*see, e.g.*, Dkt. No. 41 at 11–12). Given the Parties' substantial discussion of the contract in their

4   motion practice, it is clear that the contract is relevant. Moreover, Plaintiff does not question the

5   authenticity of the reproduction of the contract that Tesserae Defendants have provided at

6   Docket No. 40-1. In sum, all of the conditions for incorporation by reference have been satisfied.

7   *See Coto Settlement*, 593 F.3d at 1038.

8          Therefore, the Court finds that it may consider the contents of the contract when

9   adjudicating the instant motion to dismiss, without converting the motion to dismiss into a

10  motion for summary judgment.

11  **B.     Applicable Law**

12         "A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the

13  State in which it sits." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49,

14  65 (2013). Therefore, Washington choice-of-law rules apply here. *See, e.g.*, *Marshall v. Hipcamp*

15  *Inc.*, 735 F. Supp. 3d 1283, 1291 (W.D. Wash. 2024) (applying Washington choice-of-law rules

16  in diversity case).

17         **1.     Contract Claims**

18         In Washington, "[a]n express choice of law clause in a contract will be given effect, as

19  expressing the intent of the parties, so long as application of the chosen law does not violate the

20  fundamental public policy of [Washington]." *McGill v. Hill*, 31 Wn. App. 542, 547, 644 P.2d

21  680 (1982). Here, the contract between Plaintiff and Defendant Tesserae includes a choice-of-

22  law clause that provides that it "shall be deemed to be a contract under the laws of the State of

23  Georgia," and elaborates, "the construction, interpretation and performance of this Agreement

24  and all transactions hereunder shall be governed by the laws of the State of Georgia." *Id.* Further,

Tesserae Defendants assert in their motion that Plaintiff's contract with Defendant Tesserae is governed by Georgia law (Dkt. No. 40 at 9 n.2), and Plaintiff does not dispute this assertion. Therefore, Georgia law applies to the first (breach of contract), second (breach of the covenant of good faith and fair dealing), and third (contractual indemnification) causes of action.

### 2.    Tort and Unjust Enrichment Claims

In the Ninth Circuit, "[c]laims arising in tort are not ordinarily controlled by a contractual choice of law provision." *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992). "Rather, they are decided according to the law of the forum state." *Id.*; *see Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1127 (W.D. Wash. 2010) ("In Washington, a 'choice of law provision in a contract does not govern tort claims arising out of the contract.'" (quoting *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 159, 744 P.2d 1032 (1987))).

"The Washington Supreme Court has noted several principles that serve as a starting point for the choice of law analysis." *Bayley Constr. v. Wausau Bus. Ins. Co.*, No. C12-1176, 2012 WL 12874163, at *3 (W.D. Wash. Dec. 19, 2012). These principles are:

1.    *[T]he normal expectation should be that the rule of decision will be supplied by the domestic law as a matter of course.*

2.    The court should ordinarily depart from this procedure only at the instance of a party wishing to obtain the advantage of a foreign law.

3.    The law of the forum, as the source of the rule of decision, should normally be displaced only by the interested party's timely invocation of the foreign law. The interested party invokes the foreign law by calling attention to its relevance and its superior claim to be applied, and by informing the court of its tenor.

*Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 100, 864 P.2d 937 (1994) (emphasis in original).
Here, "[b]ecause Washington is the forum state, its law is applied unless the interested party, in a
timely manner, invokes foreign law." *Perry v. HAL Antillen NV*, No. C12-850, 2013 WL
2099499, at *11 n.9 (W.D. Wash. May 14, 2013). Tesserae Defendants assert that Washington
law applies to Plaintiff's tort claims (Dkt. No. 40 at 19 n.9), and Plaintiff does not dispute this
assertion. Therefore, the Court applies Washington law to Plaintiff's fourth (negligent
misrepresentation), fifth (negligence), and seventh (intentional misrepresentation) causes of
action.

As to Plaintiff's claim of unjust enrichment, which sounds in "neither tort nor contract,"
*Davenport v. Wash. Educ. Ass'n*, 147 Wn. App. 704, 724, 197 P.3d 686 (2008), Tesserae
Defendants apply Washington law in their motion, but they do not affirmatively assert that
Washington law should govern. *See* Dkt. No. 40 at 25–26. For its part, Plaintiff does not declare
a preference for any particular jurisdiction's law. *See generally* Dkt. Nos. 38, 41. However,
Tesserae Defendants expressly disavow any conflict of law, noting that "Georgia follows a
similar approach [to Washington] to unjust enrichment claims." *Id.* at 25 n.13.[1] Absent a "timely
invocation" of foreign law, then, the Court will apply Washington law to Plaintiff's eighth cause
of action. *See Burnside*, 123 Wn.2d at 100.

---

[1] Arguably, given the citizenship of Defendants Erpizo and Spears, Texas has an interest in applying Texas law to
Plaintiff's claim for unjust enrichment. *See* Dkt. No. 38 ¶¶ 4, 5. With respect to the particular legal principle at issue
here, however, application of Texas law to Plaintiff's claim for unjust enrichment would lead to the same outcome
as the application of Washington or Georgia law, as all three jurisdictions generally describe unjust enrichment the
same way, and all three jurisdictions require a plaintiff to establish the same elements when pleading it. *Compare
Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 111 (Tex. App. 2013), *with Austin v. Ettl*, 171 Wn. App. 82, 92, 286
P.3d 85 (2012), *and Campbell v. Ailion*, 790 S.E.2d 68, 73 (Ga. Ct. App. 2016). Therefore, there is only a "false
conflict" of law here, and "the presumptive local law"—i.e., Washington law—"applies." *Rittmann v. Amazon.com,
Inc.*, 971 F.3d 904, 920 (9th Cir. 2020) (discussing Washington choice-of-law doctrine).

1    **C.    "Shotgun Pleadings" and Federal Rule of Civil Procedure 8**

2    Tesserae Defendants characterize Plaintiff's SAC as a "shotgun pleading" that violates

3    Federal Rule of Civil Procedure 8's requirements that a claim for relief contain "a short and plain

4    statement of the claim showing that the pleader is entitled to relief." Dkt. No. 40 at 7 (quoting

5    Fed. R. Civ. P. 8(a)(2)). Tesserae Defendants cite Eleventh Circuit authority to argue that the

6    Court should therefore dismiss the SAC out of hand because, as a "shotgun pleading," the SAC

7    "clog[s] the Court's docket with vague and confusing claims." *Id.* (quoting *Weiland v. Palm*

8    *Beach Cnty. Sheriff's Off.*, 792, F.3d 1313, 1321 (11th Cir. 2015)). Specifically, Defendants

9    argue that the SAC "contain[s] multiple counts where each count adopts the allegations of all

10   preceding counts, causing each successive count to carry all that came before and the last count

11   to be a combination of the entire complaint." *Id.* (quoting *Weiland*, 792 F.3d at 1322).

12   Tesserae Defendants are correct that the first paragraph of each cause of action pleaded in

13   the SAC "incorporates the preceding paragraphs by reference as if set forth here in full." *Id.* at 8

14   (citing Dkt. No. 38 ¶¶ 50, 58, 69, 79, 92, 104, 110, 122). But Tesserae Defendants are not correct

15   that this "leaves the Court to guess as to which facts support which claims and leaves the

16   Defendants without adequate notice of the allegations supporting each cause of action." *Id.*

17   Indeed, the clarity and quality of Tesserae Defendants' motion to dismiss demonstrates their

18   facility with the causes of actions and their comprehension of Plaintiff's allegations.

19   Moreover, Tesserae Defendants overreach when describing the state of the law in this

20   District and this Circuit with respect to so-called "shotgun pleadings." Only the Eleventh Circuit,

21   in *Weiland*, endorses the comprehensive taxonomy of shotgun pleadings that defines four types

22   of such pleadings, then categorically rules out all of them as violative of Rule 8. *See Weiland*,

23   792 F.3d at 1321–23. In the Ninth Circuit, courts approach the concept of "shotgun pleading"

24   from a functional, as opposed to formal, standpoint. The Court could locate only one reported

1    case where the Ninth Circuit has held forth on the subject. In *Destfino v. Reiswig*, the Ninth

2    Circuit affirmed the district court's dismissal of a so-called "shotgun pleading," but not because

3    the plaintiff's second amended complaint was, on its face, a "shotgun pleading." 630 F.3d 952,

4    958 (9th Cir. 2011). Rather, the Court of Appeals examined the practical problems posed by the

5    deficiencies in the pleading, crediting the district court's conclusions that the complaint's

6    "everyone did everything allegations" would "lead to broad discovery and other pre-trial

7    problems, and create an undue burden on the Court." *Id.*

8         Further, the leading case on "shotgun pleading" in this District, *Dahlstrom v. Life Care*

9    *Centers of America, Inc.*—which Defendants here cite as supportive of their position (Dkt.

10   No. 40 at 7)—also takes a functional approach to the subject, criticizing the "shotgun pleading"

11   under review in that case as "complicat[ing] the Court's efforts to understand which factual

12   allegations support which claims and against which Defendants." No. C21-1465, 2023 WL

13   4893491, at *9 (W.D. Wash. Aug. 1, 2023). That is, the pleading was problematic because it was

14   hard to comprehend, not because the court disfavored its format. Moreover, the *Dahlstrom*

15   court's emphasis on its difficulty comprehending the specifics of the complaint was

16   understandable: The pleading at issue included some 56 defendants and 14 causes of action,

17   confusingly articulated in inconsistently numbered paragraphs over 70 pages. *See* Compl. at 1–

18   70, *Dahlstrom*, No. C21-1465 (W.D. Wash. Oct. 27, 2021), Dkt. No. 1-2.

19        In contrast here, despite Plaintiff's "successive-incorporation" style of pleading in its

20   SAC, the Court has little difficulty determining who is alleged to have done what. The Court

21   acknowledges that the SAC represents the first kind of shotgun pleading described in *Weiland*,

22   "where each count adopts the allegations of all preceding counts." *Weiland*, 792 F.3d at 1321.

23   But the Court is not confused by Plaintiff's allegations, nor does it believe that Plaintiff's

24   approach will "lead to broad discovery and other pre-trial problems, and create an undue burden

on the Court." *Destfino*, 630 F.3d at 958. Individual acts are attributed to specific actors, and causes of action—as well as the particular Defendants against whom they are asserted—are plainly delineated. Therefore, the Court will not dismiss the SAC on the ground that it is an impermissible shotgun pleading.

**D.    Plaintiff's Causes of Action**

The Court turns now to the substance of the SAC and Tesserae Defendants' motion to dismiss.

### 1.    Contract Claims: First, Second, and Third Causes of Action

Plaintiff's first three causes of action are contract-based claims: breach of contract (*see* Dkt. No. 38 ¶¶ 50–57), breach of the covenant of good faith and fair dealing (*id.* ¶¶ 58–68), and contractual indemnification (*id.* ¶¶ 69–78). The claims are predicated on a Service Agreement (the "Contract") into which Plaintiff and Defendant Tesserae entered on August 16, 2022 (Dkt. No. 40-1). As discussed above, *see supra* Section III.B.1, the Contract is governed by Georgia law. *See* Dkt. No. 40-1 at 10 ¶ D.

#### a.    *Defendant Drishpon*

Plaintiff has no contractual causes of action against Defendant Drishpon, because Defendant Drishpon is not party to the Contract. *See* Dkt. No. 40-1 at 1 (establishing the Contract as between Defendant Tesserae and Plaintiff). As a nonparty to the Contract, Defendant Drishpon cannot be liable for its breach. *See Winterchase Townhomes, Inc. v. Koether*, 387 S.E.2d 361, 363 (Ga. Ct. App. 1989). Further, there is no privity of contract between Plaintiff and Defendant Drishpon, privity of contract being "narrowly defined as '[t]hat connection or relationship which exists between two or more contracting parties.'" *Decatur N. Assocs., Ltd. v. Builders Glass, Inc.*, 350 S.E.2d 795, 796 (Ga. Ct. App. 1986) (alteration in original) (quoting *Black's Law Dictionary* (5th ed. 1979)). The Contract clearly establishes a "connection or

relationship" between Plaintiff and Defendant Tesserae and does not contemplate Defendant
Drishpon's inclusion in the agreement. *See* Dkt. No. 40-1 at 3 (establishing Defendant Tesserae
and Plaintiff as parties to the Contract), 10 (integration clause establishing Contract as the "entire
[a]greement" between the Defendant Tesserae and Plaintiff).

Absent privity of contract, then, Plaintiff seeks to impute liability to Defendant Drishpon
by way of the "alter ego doctrine," an equitable principle by which courts "disregard the
corporate form if 'a corporation is a mere alter ego or business conduit of a person' and the
corporate form was 'used as a subterfuge so that to observe it would work an injustice.'" *Ralls
Corp. v. Huerfano River Wind, LLC*, 27 F. Supp. 3d 1303, 1328 (N.D. Ga. 2014) (quoting *Baillie
Lumber Co. v. Thompson*, 612 S.E.2d 296, 299 (Ga. 2005)). A court's disregard for the corporate
form is known as "piercing the corporate veil." *Christopher v Sinyard*, 723 S.E.2d 78, 80 (Ga.
Ct. App. 2012). It "is applied in Georgia to remedy injustices which arise where a party has
overextended his privilege in the use of a corporate entity in order to defeat justice, perpetuate
fraud, or to evade contractual or tort responsibility." *Id.*

Plaintiffs alleging alter ego must meet a high standard. "It is clear . . . that the Georgia
courts . . . do not disregard the corporate form lightly." *Kipperman v. Onex Corp.*, No. C05-
1242, 2006 WL 8421931, at *29 n.24 (N.D. Ga. Sept. 15, 2006). In determining whether an
individual was an alter ego of a corporate entity,

> it must be shown [1] that the [individual's] disregard of the
> corporate entity made it a mere instrumentality for the transaction
> of their own affairs; [2] that there is such unity of interest and
> ownership that the separate personalities of the corporation and the
> owners no longer exist; and [3] [that] to adhere to the doctrine of
> corporate entity would promote injustice or protect fraud.

*Functional Prods. Trading, S.A. v. JITC, LLC*, No. C12-355, 2014 WL 3749213, at *5 (N.D. Ga.
July 29, 2014) (first, third, fourth, and fifth alterations in original) (quoting *Derbyshire v. United*

1    *Builders Supplies, Inc.*, 392 S.E.2d 37, 40 (Ga. Ct. App. 1990)). Thus, under Georgia law, a

2    plaintiff must establish three elements to successfully demonstrate alter ego: "mere

3    instrumentality," "unity of interest," and "promot[ion] of injustice." *Id.* Georgia courts describe

4    this as a requirement that "[t]he plaintiff must show that the defendant disregarded the

5    separateness of legal entities by commingling on an interchangeable or joint basis or confusing

6    the otherwise separate properties, records or control." *Christopher*, 723 S.E.2d at 80. Georgia

7    courts have identified various indicia that might suggest an alter-ego relationship. "Such

8    evidence may include the owner using corporate funds for personal expenses or the owner

9    bleeding one company to pay the expenses of another company he owns or the owner treating all

10   his companies and himself as one unit." *Scott Bros. v. Warren*, 582 S.E.2d 224, 227 (Ga. Ct.

11   App. 2003) (collecting cases).

12        On a motion to dismiss, the Court is concerned with the "legal sufficiency of the claims

13   asserted in the complaint." *Navarro v. Block*, 250 F.3d, 729, 732 (9th Cir. 2001). "A motion to

14   dismiss for failure to state a claim upon which relief can be granted is a purely procedural

15   question . . . [thus] the law of the regional circuit, in this case the Ninth Circuit, is applied."

16   *Maxlinear, Inc. v. Silicon Lab'ys Inc.*, No. C12-1161, 2012 WL 12878677, at *1 (S.D. Cal. July

17   30, 2012) (quoting *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355–56 (Fed. Cir. 2007))

18   (cleaned up). In other words, while Georgia law provides the substantive elements of alter ego

19   and establishes what Plaintiff must demonstrate for the Court to pierce the corporate veil, the

20   Federal Rules of Civil Procedure and Ninth Circuit law provide the procedural standards by

21   which Plaintiff must plead them in this forum.

22        "Because 'fraud is a necessary element of the alter ego doctrine,' a party pleading alter

23   ego must satisfy the heightened pleading standard of Rule 9(b)." *Hadnagy v. Moss*, No. C23-

24   1932, 2024 WL 1328568, at *6 (W.D. Wash. Mar. 28, 2024) (quoting *A. Darino & Sons, Inc. v.*

1    *Dist. Council of Painters No. 33*, 869 F.2d 514, 519 (9th Cir. 1989)). "For such claims, 'a party

2    must state with particularity the circumstances constituting fraud or mistake.'" *Id.* (quoting Fed.

3    R. Civ. P. 9(b)). Such particularity means "'the who, what, when, where, and how' of the

4    misconduct charged." *Kearns*, 567 F.3d at 1124 (quoting *Vess*, 317 F.3d at 1106).

5         Plaintiff alleges that Defendant Drishpon was an alter ego of Defendant Tesserae. Dkt.

6    No. 38 ¶¶ 51, 59, 70. Defendant Drishpon, Plaintiff argues, "completely controlled, dominated,

7    managed, and operated [Defendant] Tesserae to suit [his] own convenience." *Id.* ¶ 10.

8    Defendants Drishpon and Tesserae allegedly maintained "a unity of interest and ownership . . .

9    such that any separateness between them . . . ceased to exist." *Id.* ¶ 11.

10        These allegations do not meet Rule 9(b)'s particularity standard. Rather than allege

11   specific facts to plausibly demonstrate Defendant Drishpon as Defendant Tesserae's alter ego,

12   Plaintiff uses conclusory statements that merely recite the elements it needs to establish. Plaintiff

13   alleges that there "existed a unity of interest and ownership" between Defendant Drishpon and

14   Defendant Tesserae, "such that any separateness between them . . . ceased to exist." Dkt. No. 38

15   ¶¶ 10, 11. Defendant Drishpon (and Defendant Spears) "completely controlled, dominated,

16   managed, and operated Tesserae to suit their own convenience." *Id.* ¶¶ 10, 11. These are

17   conclusory statements. Far from providing answers to who, what, when, where, and how, these

18   allegations merely restate the legal elements of alter ego. *Compare id.*, *with Functional Prods.*

19   *Trading, S.A.*, 2014 WL 3749213, at *5 (reciting elements of alter ego).

20        Plaintiff argues that its allegation that Defendant Drishpon took assets from Defendant

21   Tesserae "to start a new business venture" is sufficient to demonstrate Defendant Drishpon's

22   "dominat[ion] and control[]" over Defendant Tesserae. Dkt. No. 41 at 11.[2] But even if the Court

23

24   ---

[2] Plaintiff's opposition brief (Dkt. No. 41) relies on citations to Plaintiff's First Amended Complaint ("FAC") (Dkt. No. 21), which was dismissed by the Court on December 18, 2024 (*See* Dkt. No. 35) and was, in any event,

considers this allegation as potentially satisfying *one* of the three elements of a demonstration of alter ego—and Plaintiff does not indicate which element it directs the "new business venture" allegation toward—"Plaintiff does not allege," beyond conclusory assertions, "that there was such a unity between the interests of [Defendants Drishpon and Tesserae] that they did not exist as separate personalities." *Naga Hanuman Fish Packers v. Sivani Int'l LLC*, No. C23-2019, 2023 WL 8505750, at *3 (N.D. Ga. Oct. 20, 2023). And, as in *Naga Hanuman Fish Packers*, Plaintiff here "does not plead facts to show that piercing the corporate veil would promote injustice or protect fraud." *Id.*

Therefore, because the SAC does not plead sufficient facts to plausibly allege alter-ego liability under Rule 9(b), the Court will not pierce the corporate veil here and impute Defendant Tesserae's alleged contractual liability to Defendant Drishpon. Consequently, because Defendant Drishpon is not party to the Contract with Plaintiff, Plaintiff's first, second, and third causes of action, as against Defendant Drishpon, are DISMISSED.

### b.   *Defendant Tesserae*

With respect to Plaintiff's contract-based claims, in their motion to dismiss, Tesserae Defendants challenge only Plaintiff's third cause of action, for contractual indemnification, as alleged against Defendant Tesserae. *See* Dkt. No. 40 at 8–16.[3] As pleaded, the contractual-indemnification claim is actually a restatement of the claim for breach of contract. Under Federal

---

superseded by Plaintiff's SAC (Dkt. No. 38). The SAC and FAC are not identical. *Compare* Dkt. No. 38, *with* Dkt. No. 21. Consequently, many of the citations in the opposition brief are, to use the language of the internet, broken links. Where it can, the Court will attempt to locate the paragraphs in the SAC that it believes Plaintiff intended to cite. Plaintiff is cautioned, however, to cite-check future submissions more carefully.

[3] Tesserae Defendants argue that "Counts I, II and III also fail, in part, against all Defendants because Plaintiffs are barred from recovering indirect or consequential damages under the plain wording of the Contract." Dkt. No. 40 at 16. However, other than this single introductory sentence, Defendants include absolutely no argument with respect to Count I (breach of contract) and Count II (breach of the covenant of good faith and fair dealing), as alleged against Defendant Tesserae, either in their motion or in their reply. *See generally* Dkt. Nos. 40, 42. As such, the Court considers only Tesserae Defendants' motion to dismiss Counts I and II as alleged against Defendant Drishpon.

1    Rule of Civil Procedure 12(f), "The court may strike from a pleading . . . any redundant . . .

2    matter." The court may do so "on its own." Fed. R. Civ. P. 12(f)(1). "A 'redundant' matter

3    consists of allegations that constitute a needless repetition of other averments or which are

4    foreign to the issue to be denied." *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005).

5            In its third cause of action, Plaintiff alleges that "[b]ecause Tesserae . . . failed to perform

6    its material obligations under the Contract, Tesserae is contractually obligated to indemnify

7    Plaintiff from its losses, damages, and expenses, including its reasonable attorneys' fees, up to

8    the Contract Cost of $414,696.22." Dkt. No. 38 ¶ 78. There is no daylight between this purported

9    claim for contractual indemnity and Plaintiff's claim for breach of contract. Both allege that

10   Defendant Tesserae did not fulfill the promises it made to Plaintiff in the Contract—Plaintiff's

11   allegation that Defendant Tesserae "failed to perform its material obligations under the Contract"

12   (*id.*) is no different from its allegation that Defendant Tesserae "failed and refused to deliver the

13   promised software to [Plaintiff]" (*id.* ¶ 53). Both seek damages coincidental with Georgia's

14   statutory definition of breach-of-contract damages—that is, "[d]amages . . . [that] arise naturally

15   and according to the usual course of things from such breach and such as the parties

16   contemplated, when the contract was made, as the probable result of its breach." Ga. Code Ann.

17   § 13-6-2. Put another way, the "claims, demands, losses, damages or expenses, including

18   reasonable attorney's fees, arising from or in connection with the [Contract]" that are

19   contemplated by the Contract's indemnification clause (Dkt. No. 40-1 at 4) are *Plaintiff's*, and

20   these are the same damages alleged, albeit with more specificity, in Plaintiff's breach-of-contract

21   claim. *Compare* Dkt. No. 38 ¶ 78, *with id.* ¶ 57; *see Video Ent., Inc. v. Cartridge Rental*

22   *Network*, 226 S.E.2d 794, 795 (Ga. Ct. App. 1976) (finding, in case where defendant

23   "undoubtedly breached the contract," that plaintiff was entitled to allege breach-of-contract

24   damages, as such damages are defined by statute).

In its response to Tesserae Defendants' motion to dismiss, Plaintiff's assertions only serve to underline how the two claims coincide with each other. Plaintiff's argument for sustaining the claim against Tesserae Defendants' motion is that Plaintiff is not "bar[red] from seeking to recover damages it incurred when Tesserae did NOT provide the promised services." Dkt. No. 41 at 12. Plaintiff argues further that Tesserae Defendants' citation of the liability-limiting section of the Contract "does not apply <u>when Tesserae breached the contract and completely failed to provide [the promised] service.</u>" *Id.* (underscore in original). These are allegations of breach, not indemnification.

"[T]he purpose of an indemnity clause in a contract is not to protect the parties to the contract from legal action by each other to enforce the contract." *SRG Consulting, Inc. v. Eagle Hosp. Physicians, LLC*, 640 S.E.2d 306, 309 (Ga. Ct. App. 2006). Put another way, the "indemnification" that Plaintiff seeks here is simply the application of contract law, whereby "[d]amages are given as compensation for the injury sustained as a result of the breach of a contract." Ga. Code Ann. § 13-6-1.

Therefore, Tesserae Defendants' motion to dismiss as to Plaintiff's third cause of action is GRANTED, and Plaintiff's claim for contractual indemnification against Tesserae Defendants is DISMISSED.

### 2.    Tort Claims: Fourth, Fifth, and Seventh Causes of Action

Plaintiff brings three tort claims: negligent misrepresentation (Dkt. No. 38 ¶¶ 79–91), negligence (*id.* ¶¶ 92–103), and intentional misrepresentation (*id.* ¶¶ 110–121). Tesserae Defendants argue that all three tort claims are barred by the independent duty doctrine, which precludes "recovery in tort for economic losses suffered by parties to a contract unless the breaching party owed a duty in tort independent of the contract." *See* Dkt. No. 40 at 19 (quoting *Pointe at Westport Harbor Homeowners' Ass'n v. Eng'rs Nw., Inc., P.S.*, 193 Wn. App. 695,

702–03, 376 P.3d 1158 (2016)). In other words, breach of contract is a claim sounding

exclusively in contract law; there is no "tort" for breach of contract. The acts or omissions

comprising the breach of contract do not also provide the basis for a separate tort action, unless

the defendant owed the plaintiff an extracontractual duty that was not contemplated by the

contract. For its part, Plaintiff argues that its "claims for negligent misrepresentation, intentional

misrepresentation, and negligence all present additional facts and bases for recovery outside of

the contract." Dkt. No. 41 at 12. Plaintiff also points out that, if Defendant Drishpon was not

party to its contract with Defendant Tesserae, then the independent duty doctrine would not

apply to the tort claims brought against him. *Id.* at 13. The Court will discuss each claim, as

alleged against Defendant Tesserae and Defendant Drishpon, in turn.

### a.    *Defendant Tesserae*

#### (1)    Negligent Misrepresentation

Irrespective of the independent duty doctrine, Plaintiff's negligent-misrepresentation

claim as alleged against Defendant Tesserae fails because, as pleaded, it does not meet the

heightened pleading standard of Rule 9(b). *See Wessa v. Watermark Paddlesports, Inc.*, No.

C06-5156, 2006 WL 1418906, at *2 (W.D. Wash. May 22, 2006) (finding that a "negligent

misrepresentation cause of action is subject to the heightened pleading requirements of Rule

9(b)"). As discussed above, *see supra* Section II, Rule 9(b) requires that a pleading address with

particularity the so-called "journalist's questions"—the who, what, when, where, and how—as

they relate to the claim. *Kearns*, 567 F.3d at 1124. The SAC does not sufficiently do so. Further,

negligent misrepresentation is a relatively fact-intensive cause of action that requires a plaintiff

to lay robust foundation. In Washington, there are seven elements to the claim:

> (1) [T]he defendant supplied information for the guidance of
> another in his or her business transactions, (2) the information was
> false, (3) the defendant knew or should have known that the

information was supplied to guide the plaintiff in his or her business transactions, (4) the defendant was negligent in obtaining or communicating the false information, (5) the plaintiff relied on the false information, (6) the plaintiff's reliance was reasonable, and (7) the false information proximately caused the plaintiff damages.

*Repin v. State*, 198 Wn. App. 243, 278, 392 P.3d 1174 (2017) (citing *Ross v. Kirner*, 162 Wn.2d 493, 499, 172 P.3d 701 (2007)). As pleaded, the SAC does not adequately—that is, to the standards of Rule 9(b)—tell the story of how it came to be deceived by Defendants Tesserae, Spears, and Drishpon; the SAC is short on specifics. For example, Plaintiff vaguely asserts that Defendant Spears and Tesserae Defendants represented that "they could and would deliver a working ERP platform for Plaintiff to use in its business operations," but leaves out particular details about when this information was conveyed, how, and by whom. Dkt. No. 38 ¶ 82. Plaintiff asserts that Defendant Spears and Defendant Drishpon "repeatedly and constantly assured Plaintiff that Defendant Tesserae would deliver the promised services," but fails to provide any specific details about these alleged assurances. *Id.* ¶ 83. Such assurances might have been delivered twice, in oblique telephone conversations, or 20 times, in clear and expressive emails. Defendant Spears might have said one thing, Defendant Drishpon another. As pleaded, then, how Plaintiff gleaned such certainty about—and thus came to reasonably rely on—what Tesserae Defendants communicated is a mystery.

The thinness of the pleading also leads the Court to conclude that, as pleaded, the negligent-misrepresentation claim here is barred by the independent duty doctrine. Plaintiff's argument that it has "present[ed] additional facts and bases for recovery outside of the contract" (Dkt. No. 41 at 12) is unavailing, because the independent duty doctrine is surmounted not by additional facts and bases for recovery, but by an assertion of a *duty* that existed outside of the contract. *See Pointe at Westport Harbor*, 193 Wn. App at 703. And regardless of whether such a

1   duty existed—a question the Court does not answer here—the key point is that Plaintiff has not

2   alleged that it did.

3        Therefore, Plaintiff's claim of negligent misrepresentation, as alleged against Defendant

4   Tesserae, is DISMISSED.

5                    (2)    Negligence

6        Plaintiff's negligence claim, as alleged against Defendant Tesserae, is precluded by the

7   independent duty doctrine. As pleaded, the claim is nearly indistinguishable from Plaintiff's

8   claim for breach of contract (and, for that matter, from Plaintiff's negligent misrepresentation

9   and intentional misrepresentation claims too). *Compare* Dkt. No. 38 ¶¶ 92–103, *with id.* ¶¶ 50–

10  57. As discussed above, the independent duty doctrine demands that a tort claim allege that the

11  defendant owe the plaintiff a duty independent of its contractual obligations. Plaintiff's

12  negligence claim simply does not do that. Indeed, the only duty that Plaintiff assigns to

13  Defendant Tesserae is to deliver the contracted-for ERP platform to Plaintiff. *Id.* ¶ 96. Plaintiff

14  alleges several commissions and omissions, including the moving of Defendant Tesserae's assets

15  and knowledge to Defendant Erpizo (*id.* ¶ 99), Defendant Tesserae's severing its relationship

16  with Nextworld (*id.* ¶ 101), and Defendant Tesserae's failure to notify Plaintiff of same (*id.*). But

17  none of these is connected to an expressly alleged extracontractual duty.

18       Further, as alleged, Plaintiff's losses are purely economic. When the Washington

19  Supreme Court sought to distinguish those negligence actions that are barred by the independent

20  duty doctrine from those that are not, the court focused on "the safety of persons and property

21  from physical injury, an interest that the law of torts protects vigorously." *Affiliated FM Ins. Co.*

22  *v. LTK Consulting Servs., Inc.*, 170 Wn.2d 442, 452–53, 243 P.3d 521 (2010). Rejecting the

23  notion that a faulty monorail grounding system caused damages comprising "purely economic

24  losses stemming from repair costs, which [the contractor] was contractually obligated to pay, and

from business interruption," the court found instead that engineers have an extracontractual duty of care, derived from tort law, to ensure that their projects are safe. *Id.* at 444, 454; *see Donatelli v. D.R. Strong Consulting Eng'rs, Inc.*, 179 Wn.2d 84, 100, 312 P.3d 620 (2013) (Madsen, C.J., dissenting) ("[The property owners] do not assert *property damage or personal injury*, the kind of harm that should be remedied outside the contractual arrangement." (emphasis added)). More generally, the question here is whether the tort claim is predicated upon an injury or issue that implicates the fundamental purpose of tort law. *See Staton Hills Winery Co., Ltd. v. Collons*, 96 Wn. App. 590, 594, 980 P.2d 784 (1999) (describing contract law as focused on "enforcing expectations created by agreement," and tort law as focused on "protecting people and property by imposing a duty of reasonable care on others").

Here, Plaintiff does not point to any authority to indicate that Defendant Tesserae maintained an extracontractual duty of care, let alone one derived from safety or injury prevention. The cause of action, as pleaded, seeks to vindicate Plaintiff's expectations derived from the Contract with Defendant Tesserae—namely, that Defendant Tesserae would deliver the contracted-for services, and Plaintiff would enjoy the benefits that those services provided. Moreover, the damages Plaintiff alleges are, essentially, repair costs and business interruption— the consequences of Defendant Tesserae's alleged nonperformance. *See* Dkt. No. 38 ¶ 103 (describing damages as "out of pocket costs to cobble together and re-implement a working ERP system, accounting costs to fix improper accounting done by Defendant Tesserae, the ongoing monthly lease obligation of $13,995 to Encore," and undefined "other damages").[4] Simply put, this is a contract claim.

---

[4] Plaintiff's assertion that it has asserted more than merely economic damages because it "s[eeks] damages according to proof for its causes of action for negligence, negligent misrepresentation, and intentional misrepresentation" is unavailing, as "damages according to proof" is but a threadbare recitation of an element of these claims. *See Basham v. Pac. Funding Grp.*, No. C10-96, 2010 WL 2902368, at *3 (E.D. Cal. July 22,

1    Therefore, Plaintiff's claim of negligence, as alleged against Defendant Tesserae, is

2    DISMISSED.

3                        (3)    Intentional Misrepresentation

4        The same analysis that applies to Plaintiff's claim of negligent misrepresentation also

5    applies to Plaintiff's claim of intentional misrepresentation. Plaintiff has not adequately pleaded

6    particular facts to satisfy the requirements of Rule 9(b), and Plaintiff has not alleged an

7    extracontractual duty that Defendant Tesserae owed to it with respect to misrepresentation. *See*

8    *Microsoft Corp. v. My Choice Software, LLC*, No. C18-608, 2018 WL 9662626, at *5 (W.D.

9    Wash. Sept. 28, 2018) (dismissing simultaneously both intentional misrepresentation and

10   negligent misrepresentation counterclaims because counterclaimant "fail[ed] to identify the

11   'who, what, where, when, and how' of . . . alleged misrepresentation, as is required under Rule

12   9(b)").

13       Therefore, Plaintiff's claim of intentional misrepresentation, as against Defendant

14   Tesserae, is DISMISSED.

15           **b.    *Defendant Drishpon***

16       As to Plaintiff's tort claims against Defendant Drishpon, because Defendant Drishpon

17   was not a party to Plaintiff's Contract with Defendant Tesserae, the independent duty doctrine

18   does not apply to these causes of action. But the heightened pleading standards of Rule 9(b) do

19   apply to the claims of negligent misrepresentation and intentional misrepresentation and, in this

20   regard, the claims against Defendant Drishpon are deficient for the same reasons that they are

21   deficient as alleged against Defendant Tesserae.

22

23   _____

24   2010) (finding that plaintiffs' allegation that they "suffered compensable damages according to proof" in a
     negligence claim "epitomizes the type of conclusory statement that fails Rule 8's pleading standard" under *Iqbal*).

ORDER ON MOTION TO DISMISS - 24

With respect to negligence, because Defendant Drishpon did not owe Plaintiff any contractual obligation, *see supra* Section III.D.1.a, the Court bypasses the independent duty doctrine and assesses the sufficiency of the claim on its own terms. There are four elements to a negligence claim: "(1) the existence of a duty owed to the complaining party; (2) a breach thereof; (3) a resulting injury; and (4) a proximate cause between the claimed breach and resulting injury." *Scott v. Amazon.com, Inc.*, 33 Wn. App. 2d 44, 61, 559 P.3d 528 (2024) (quoting *Hansen v. Wash. Nat. Gas Co.*, 95 Wn.2d 773, 776, 632 P.2d 504 (1981)).

Plaintiff's claim here fails because the SAC does not appear to identify any duty that Defendant Drishpon owed Plaintiff. As the Court explained above, Plaintiff's negligence claim is nearly indistinguishable from a breach-of-contract claim, and the claim fails against Defendant Tesserae because of the independent duty doctrine. The claim fails against Defendant Drishpon for a similar reason: it does not identify any duty of care, contractual or otherwise, that Defendant Drishpon owed to Plaintiff. It naturally follows, then, that Plaintiff does not identify a breach of that duty.

Therefore, Plaintiff's claims of negligent misrepresentation, intentional misrepresentation, and negligence, as against Defendant Drishpon, are DISMISSED.

### 3.    Washington Consumer Protection Act Claim: Sixth Cause of Action

Under the citizen suit provision of the WCPA, "'[a]ny person who is injured in his or her business or property' by a violation of the act may bring a civil suit for injunctive relief, damages, attorney fees and costs, and treble damages." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 37, 204 P.3d 885 (2009) (quoting RCW 19.86.090). "A CPA claim may be predicated on either a per se violation of the statute or on deceptive practices unregulated by statute but involving the public interest." *Id.* at 37 n.3. "Ordinarily a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the private interest."

*Birkholm v. Wash. Mut. Bank, F.A.*, 447 F. Supp. 2d 1158, 1165 (W.D. Wash. 2006) (citing

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 790, 719 P.2d

531 (1986)). But "[a] private dispute can affect the public interest if it is likely that additional

plaintiffs have been or will be injured in exactly the same fashion." *Id.* (citing *Pac. Nw. Life Ins.*

*Co. v. Turnbull*, 51 Wn. App. 692, 702–03, 754 P.2d 1262 (1988)).

Here, Plaintiff alleges that Defendants violated the WCPA by "unfairly competing with

other companies who are lawfully registered to do business in the state of Washington by making

contractual promises that they were unable to fulfill and knew they could not fulfill." Dkt. No. 38

¶ 106. If this represents a per se violation of the WCPA, Plaintiff does not identify the specific

provision of the statute that outlaws Defendants' alleged misconduct, and the Court cannot locate

within the statute the glass slipper that specifically fits the allegation. Therefore, the Court will

consider the claim to be predicated on an unregulated deceptive practice that involves the public

interest. *See Panag*, 166 Wn.2d at 37 n.3. Plaintiff alleges generally that the complained-of

conduct "affect[s] the public interest" because "[t]he people of the State of Washington have an

interest in fair competition in business and in the honesty and forthrightness of companies

engaging in business there." Dkt. No. 38 ¶ 108.

Tesserae Defendants disagree. They argue that the WCPA is inapposite here, because this

case does not represent a public-interest dispute. *See* Dkt. No. 40 at 23–24. "Plaintiff," Tesserae

Defendants argue, "has not alleged any facts to show this dispute constitutes anything more than

a breach of a private contract, which does not constitute a violation of the CPA." *Id.*

Courts use a four-factor test to evaluate whether a private dispute implicates the public

interest:

> Factors indicating that a private dispute affects the public interest
> include: (1) whether the "alleged acts" were "committed in the
> course of the defendant's business"; (2) whether the defendant

"advertise[d] to the public in general"; (3) whether the defendant "actively solicit[ed] th[e] particular plaintiff"; and (4) whether the parties "occupy unequal bargaining positions."

*Zunum Aero, Inc. v. Boeing Co.*, No. C21-896, 2022 WL 2116678, at *12 (W.D. Wash. June 13, 2022) (alteration in original) (quoting *Hangman Ridge*, 105 Wn.2d at 790). "Not one of these factors is dispositive, nor is it necessary that all be present." *Hangman Ridge*, 105 Wn.2d at 791.

Based on the allegations in the SAC, the only question that the Court can answer in the affirmative is the first—although only with respect to Defendant Tesserae, and based solely on circumstantial evidence gleaned from the Contract between Plaintiff and Defendant Tesserae, which tends to indicate that Defendant Tesserae was in the business of providing ERP software to other businesses. *See generally* Dkt. No. 40-1. Plaintiff does not allege in the SAC the larger nature of Defendant Tesserae's business, nor does it situate Plaintiff's dealings with Defendant Tesserae within it. As to the other three public-interest factors, the SAC is silent. Plaintiff alleges that it entered into a contract with Defendant Tesserae (Dkt. No. 38 ¶ 18), but it does not explain how the Parties came to be involved with one another—who, in other words, sought out business with whom, and how such courtship unfolded. Plaintiff alleges that Defendant Erpizo—which is not the subject of the instant motion—"markets itself as providing 'revolutionary cloud ERP built for distributors, manufacturers and retailers,'" and "as 'the real deal as specialists in building products, tile, carpet . . .'" (*id.* ¶ 35 (elision in original) (quoting Erpizo's website)), but Plaintiff makes no such allegations about the marketing or advertising practices of Defendant Tesserae. And while Plaintiff generally positions itself as the "little guy" in this dispute (*see id.* ¶ 15 (describing Surface Art, Inc., as a "family-owned" business with a regional scope)), it offers no facts that actually demonstrate the relative bargaining power possessed by the entities involved. In sum, only one of the public-interest factors weighs in favor of finding that this private dispute implicates the public interest.

On the allegations in the SAC, then, the Court cannot adjudicate whether Defendant Tesserae's alleged breach of its contract with Plaintiff is truly a public-interest issue for Washington consumers. Therefore, Plaintiff's WCPA claim is DISMISSED as to both Defendant Drishpon and Defendant Tesserae. *See Robinett v. Opus Bank*, No. C12-1755, 2013 WL 5850873, at *4 (W.D. Wash. Oct. 30, 2013) (dismissing WCPA claim where only two "public interest" factors weighed in favor of sustaining the claim).

### 4.    Unjust Enrichment: Eighth Cause of Action

"Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." *Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008). A claim for unjust enrichment requires: "(1) a benefit conferred upon the defendant by the plaintiff; (2) knowledge by the defendant of the benefit; and (3) [that] the defendant retains the benefit under circumstances that make it inequitable for the defendant to retain the benefit without paying for it" *Taie v. Ten Bridges LLC*, 568 F. Supp. 3d 1126, 1133 (W.D. Wash. 2021) (citing *Young*, 164 Wn.2d at 484). "[A]s a quasi-contractual remedy, unjust enrichment does not apply where there is a valid express contract between the same parties covering the same subject matter." *Id.* (cleaned up).

Tesserae Defendants argue, *inter alia*, that the Court should dismiss Plaintiff's unjust enrichment claim because the contract between Plaintiff and Defendant Tesserae "relates to the same subject matter as Plaintiff's unjust enrichment claim," and "the law precludes Plaintiff from asserting an unjust enrichment claim based on the same facts that form its breach of contract claim." Dkt. No. 40 at 26. Plaintiff responds by characterizing its unjust enrichment claim as an alternative theory of recovery based on the alleged facts. *See* Dkt. No. 41 at 15.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

### a.   *Defendant Tesserae*

Tesserae Defendants are correct that Plaintiff's unjust enrichment claim against Defendant Tesserae cannot be sustained, given the existence of a contract between Plaintiff and Defendant Tesserae that covers the same subject matter. Tesserae Defendants "do not dispute that Plaintiff has a cognizable claim for breach of contract against Tesserae at the early pleading stage" (Dkt. No. 40 at 26) and, indeed, Tesserae Defendants have attached the Contract to their motion to dismiss as an exhibit (Dkt. No. 40-1). Plaintiff's citation to and reliance on the Contract as forming the basis for a substantial part of the SAC permits the Court to consider it at this procedural posture. *See Ritchie*, 342 F.3d at 908. Neither the existence of the Contract, nor its content, is disputed by the Parties. Under these circumstances, then, there is no legal theory under which Plaintiff's unjust enrichment claim can succeed against Defendant Tesserae.

Therefore, Plaintiff's unjust enrichment claim, as alleged against Defendant Tesserae, is DISMISSED.

### b.   *Defendant Drishpon*

As pleaded, however, the unjust enrichment claim, as alleged against Defendant Drishpon, can proceed. Plaintiff alleges that Defendant Drishpon "received a benefit from [Plaintiff], in the form of over $414,000 in Contract Cost funded by [Plaintiff] under the Encore Lease." Dkt. No. 38 ¶ 127. Plaintiff alleges that Defendant Drishpon "used the funds from [Plaintiff] to create a new business venture with [Defendant Tesserae's] remaining viable assets," an allegation that, when taken in the light most favorable to Plaintiff, indicates that Defendant Drishpon knew that he had obtained a benefit—i.e., some $414,000—from Plaintiff. *Id.* ¶ 125. Plaintiff further demonstrates Defendant Drishpon's knowledge of the benefit by alleging that Defendant Drishpon "persuaded [Plaintiff] . . . to front over $414,000 to [Defendants]." *Id.* ¶ 124. Finally, Defendant Drishpon's alleged squirreliness with respect to what his company had

1    actually promised Plaintiff suggests it would be inequitable to permit him to keep the benefit.

2    Plaintiff alleges that Defendant Drishpon signed a contract on August 16, 2022, (*see* Dkt. No.

3    40-1 at 11) obliging his company to deliver a working ERP system to Plaintiff. Dkt. No. 38 ¶ 18

4    ("[Defendant Tesserae] agreed to provide ERP software and implementation for [Plaintiff].").

5    Despite this obligation, Defendant Drishpon told Plaintiff on October 4, 2023, that his

6    interpretation of the Contract obligated Defendant Tesserae only to provide Plaintiff with a

7    "proof of concept" (Dkt. No. 38 ¶ 30), a term that appears nowhere in the Contract. On a motion

8    to dismiss, the Court credits Plaintiff's representation that it would not have agreed to pay more

9    than $400,000 for a mere "proof of concept." *Id.* ¶ 31.

10         Therefore, all three elements of unjust enrichment are sufficiently pleaded, and the Court

11    DENIES Tesserae Defendants' motion to dismiss with respect to Plaintiff's claim for unjust

12    enrichment, as against Defendant Drishpon.

13    **E.    Dismissal With and Without Prejudice**

14         "[A] party is not entitled to an opportunity to amend his complaint if any potential

15    amendment would be futile." *Mirmehdi v. United States*, 689 F.3d 975, 985 (9th Cir. 2012).

16    "Normally, when a viable case may be pled, a district court should freely grant leave to amend."

17    *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys, Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011). But

18    "the district court's discretion to deny leave to amend is particularly broad where plaintiff has

19    previously amended the complaint." *Id.* (cleaned up).

20         **1.    Contract Claims**

21         With respect to Plaintiff's claims for breach of contract and breach of the covenant of

22    good faith and fair dealing, as against Defendant Drishpon, the Court grants Tesserae

23    Defendants' motion and dismisses the claims. The Court does so, however, on procedural

24    grounds, because the SAC has inadequately alleged that Defendant Drishpon was an alter ego of

Defendant Tesserae. "[D]ismissals under Rule 9(b) are functionally equivalent to dismissals under Rule 12(b)(6) and should be without prejudice if defects are curable." *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007). Plaintiff's lack of specificity in the SAC is curable, and therefore these claims, as against Defendant Drishpon, are DISMISSED WITHOUT PREJUDICE. The Court grants Plaintiff leave to amend these claims. However, amending Plaintiff's contractual indemnification claim would be futile and, therefore, this claim is DISMISSED WITH PREJUDICE, as against both Defendant Drishpon and Defendant Tesserae.

2.    **Tort Claims**

a.    ***Negligent Misrepresentation and Intentional Misrepresentation***

Likewise, Plaintiff's claims for negligent misrepresentation and intentional misrepresentation, as against Defendant Drishpon and Defendant Tesserae, are dismissed due to Plaintiff's failure to plead sufficient specificity under Rule 9(b). This is a curable defect, and therefore, these claims are DISMISSED WITHOUT PREJUDICE. *See Swartz*, 476 F.3d at 765. The Court grants Plaintiff leave to amend these claims.

b.    ***Negligence***

Plaintiff's negligence claim is dismissed because it is merely a breach-of-contract claim wrapped in the language of a negligence claim. If Plaintiff has sufficient facts to adequately plead the elements of negligence, including a duty independent of that imposed by the Contract, Plaintiff may re-plead this cause of action.

3.    **Washington Consumer Protection Act**

Plaintiff's sixth cause of action is dismissed, as against Defendant Drishpon and Defendant Tesserae, under Rule 12(b)(6), as having been inadequately pleaded as a public-interest dispute under the citizen suit provision of the WCPA. This is a curable defect and, therefore, this claim is DISMISSED WITHOUT PREJUDICE, as against Defendant Drishpon and

Defendant Tesserae. The Court grants Plaintiff leave to amend this claim. *See Shugart v. GYPSY Off. No. 251715, its Engines, Machinery, Appurtenances*, No. C14-1923, 2015 WL 1965375, at *4 (W.D. Wash. May 1, 2015) (noting "evident trend toward allowing amendment where a complaint fails to satisfy the public interest prong" of the WCPA).

### 4.    Unjust Enrichment

Plaintiff's eighth cause of action is dismissed, as against Defendant Tesserae, because it is legally untenable given the existence of a contract between Plaintiff and Defendant Tesserae. This is not a curable defect; there are no circumstances here where Plaintiff can prevail on its quasi-contractual claim. *See Group14 Techs. v. Nexeon Ltd.*, No. C22-1354, 2024 WL 4227762, at *6 (W.D. Wash. Sept. 18, 2024). Therefore, this claim is DISMISSED WITH PREJUDICE.

## IV.    CONCLUSION

Accordingly, Tesserae Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART. It is hereby ORDERED:

(1)    Plaintiff's first and second causes of action, as against Defendant Drishpon, are DISMISSED WITHOUT PREJUDICE;

(2)    Plaintiff's third cause of action, as against Defendant Drishpon and Defendant Tesserae, is DISMISSED WITH PREJUDICE;

(3)    Plaintiff's fourth, fifth, sixth, and seventh causes of action, as against Defendant Drishpon and Defendant Tesserae, are DISMISSED WITHOUT PREJUDICE;

(4)    Plaintiff's eighth cause of action, as against Defendant Tesserae, is DISMISSED WITH PREJUDICE;

(5)    If Plaintiff intends to file a third amended complaint, it SHALL do so **no later than June 2, 2025.**

Dated this 1st day of May 2025.

Tana Lin
United States District Judge