UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SURFACE ART, INC.,

Plaintiff,

v.

TESSERAE TECHNOLOGIES, LLC, et al.,

Defendants.

CASE NO. 2:24-cv-00924-TL

ORDER ON MOTION TO DISMISS THIRD AMENDED COMPLAINT

This matter is before the Court on the motion of Defendants Tesserae Technologies, LLC, and David Drishpon (together, "Tesserae Defendants") to dismiss Plaintiff's Third Amended Complaint ("TAC") (Dkt. No. 48) as to five claims against Defendant Drishpon. Dkt. No. 50. Having reviewed the Tesserae Defendants' motion, Plaintiff's response (Dkt. No. 51), and the Tesserae Defendants' reply (Dkt. No. 52), the Court GRANTS the Tesserae Defendants' motion.

//

//

ORDER ON MOTION TO DISMISS THIRD AMENDED COMPLAINT – 1

## I.    BACKGROUND

### A.    Factual Background

#### 1.    The Parties

Plaintiff Surface Art, Inc., is a Washington corporation based in Kent, Washington. Dkt. No. 48 ¶ 1. Plaintiff is a "family-owned distributor of tile and tile-related products . . . serv[ing] customers across the Western United States." *Id.* ¶ 15.

Defendant Tesserae Technologies, LLC ("Tesserae"), is a limited liability company ("LLC") based in Georgia. *Id.* ¶ 2. Defendant David Drishpon, a resident of Georgia, "was and is the CEO of Tesserae." *Id.* ¶ 3. Defendant Erpizo, LLC ("Erpizo"), is an LLC based in Texas. *Id.* ¶ 4. Defendant Mark Spears was the executive vice president of Defendant Tesserae and is also CEO of Defendant Erpizo; Defendant Spears resides in Texas. *Id.* ¶ 5. Plaintiff alleges that Defendant Spears formed Defendant Erpizo in 2023, using Defendant Tesserae's assets. *Id.*

Only Defendant Drishpon is the subject of the instant motion to dismiss. *See* Dkt. No. 50 at 6.

#### 2.    The Contract between Plaintiff and Defendant Tesserae

On or about August 16, 2022, Plaintiff and Defendant Tesserae entered into a contract, under which Defendant Tesserae "agreed to provide [enterprise resource planning ('ERP')] software and implementation for Plaintiff through its solution developer partner, Nextworld." Dkt. No. 48 ¶ 25. Nextworld is not a party to this lawsuit. Plaintiff agreed "to subscribe [to] certain application software and implementation" under the terms and conditions of the contract. Dkt. No. 40-1 (Service Agreement) at 3. As Defendant Tesserae's CEO, Defendant Drishpon signed the contract for Defendant Tesserae. *See id.* at 11.

The specific terms of the contract obliged Defendant Tesserae to "use its best efforts to provide . . . certain application software and implementation at the rates and under the terms and

conditions described" in the contract. Dkt. No. 40-1 at 3. Plaintiff understood that this "certain application software" was ERP software that would be a "technology based platform" to facilitate Plaintiff's "material inventory, samples, accounting, and other crucial foundational elements of [its] business as a tile and flooring distributor." Dkt. No. 48 ¶ 24. The contract included an integration clause, by which the four corners of the contract "constitute[d] the entire Agreement between the Parties" and "supersede[d] all prior agreements and understandings, both oral and written, with respect to the subject matter" of the contract. Dkt. No. 40-1 at 10.

Plaintiff paid for Defendant Tesserae's services indirectly. The cost of Defendant Tesserae's services to Plaintiff was $414,696.22, "which later grew to $447,840.00, plus financing charges of $161,095.00, for a total of $608,935." Dkt. No. 48 ¶ 26. Plaintiff financed the contract cost through a 33-month lease agreement with non-party Encore Leasing Group ("Encore"). Dkt. No. 48 ¶¶ 29, 30. On or about February 10, 2023, Encore paid Defendant Tesserae the entire amount that Plaintiff owed Defendant Tesserae, and Plaintiff began making monthly payments of $21,343.00 to Encore. *Id.* ¶ 31–33. As of May 2025, Plaintiff had paid Encore $511,185; Plaintiff still owed Encore $97,750 and was continuing to remit monthly payments. *Id.* ¶ 32.

Plaintiff alleges that Defendant Tesserae "failed to deliver or implement a working software platform to Surface Art, a material breach of the Contract." *Id.* ¶ 34. Defendant Tesserae, however, maintains that "proof of concept" was all it contracted for with Plaintiff. *Id.* ¶ 41. For its part, Plaintiff asserts that it "did not obligate itself to spend $608,935.00 to obtain a 'proof of concept.'" *Id.* ¶ 42.

### 3.    Defendant Tesserae's Dissolution

On or about October 13, 2023, Nextworld, Defendant Tesserae's "solution developer partner," terminated its relationship with Defendant Tesserae. *Id.* ¶ 44. Nextworld then advised

Plaintiff that it would no longer provide any services to Plaintiff as of January 14, 2024. *Id.* ¶ 45. In December 2023, Defendant Tesserae ceased its business operations. *Id.* ¶ 47. In an undated letter to Plaintiff sent in December 2023, Defendant Drishpon advised Plaintiff that Defendant Tesserae could no longer operate as a going concern. *Id.* Defendant Drishpon wrote that "Tesserae Technologies LLC made the difficult decision this week to cease its business operations effective immediately." *Id.* Defendant Drishpon continued, "Tesserae has been operating at a loss for the last few years, and with recent business setbacks, it is no longer feasible for it to operate as a going concern." *Id.*

Plaintiff alleges that Defendants Drishpon, Spears, and Tesserae "worked together to move all viable assets from Tesserae to Erpizo, then abruptly closed Tesserae's doors in December 2023." *Id.* ¶ 48. This was, alleges Plaintiff, "a studied, wrongful, intentional effort to keep [Plaintiff's] Contract Cost and avoid Tesserae's liabilities after Tesserae failed to provide the contractually promised services to [Plaintiff]." *Id.* Plaintiff alleges that Defendants "Spears, Drishpon, and Erpizo profited from the Contract Cost [that] Tesserae received under the Encore Lease funded by Plaintiff, and were able to market themselves and their companies with those funds." *Id.* ¶ 120.

**B.    Procedural Background**

On June 26, 2024, Plaintiff filed a complaint against Defendants Tesserae, Drishpon, Erpizo, and 50 unidentified Doe Defendants. Dkt. No. 1. The complaint pleaded six causes of action, including breach of contract, breach of the covenant of good faith and fair dealing, contractual indemnification, negligent representation, negligence, and unfair competition in violation of the Washington Consumer Protection Act ("WCPA" or "CPA"). *Id.* ¶¶ 31–82. On September 6, 2024, Tesserae Defendants filed a motion to dismiss. Dkt. No. 18.

ORDER ON MOTION TO DISMISS THIRD AMENDED COMPLAINT – 4

On September 26, 2024, while Tesserae Defendants' motion to dismiss was pending, Plaintiff filed a First Amended Complaint ("FAC") as a matter of course. Dkt. No. 21; *see* Fed. R. Civ. P. 15(a)(1)(B). The FAC added Defendant Spears to the roster of defendants and added two new causes of action: intentional misrepresentation and unjust enrichment. Dkt. No. 21 ¶¶ 5, 107–127. The FAC also rendered moot the pending motion to dismiss the original complaint. *See* Fed. R. Civ. P. 15(a)(1)(B); *Valadez-Lopez v. Chertoff*, 656 F.3d 851, 857 (9th Cir. 2011) (noting that an amended complaint "supersedes the original" and renders it "thereafter as non-existent"); *see also* Dkt. No. 34 (denying motion to dismiss as moot).

On October 10, 2024, Tesserae Defendants filed a motion to dismiss Plaintiff's FAC. Dkt. No. 27. On December 18, 2024, instead of ruling on the motion, the Court *sua sponte* dismissed the FAC without prejudice, finding that "at th[at] stage in the proceedings, Plaintiff's obligation to establish subject-matter jurisdiction remain[ed] unfulfilled." Dkt. No. 35 at 3. The Court determined that the FAC "d[id] not plead the citizenship of all members of the defendant LLCs and, therefore, d[id] not adequately establish th[e] Court's subject-matter jurisdiction." *Id.* at 2; *see* 28 U.S.C. § 1332(a)(1); *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("[A]n LLC is a citizen of every state of which its owners/members are citizens."). The Court gave Plaintiff leave to file a second amended complaint ("SAC") and ordered Defendants Tesserae and Erpizo—the LLCs—to file amended corporate disclosure statements under Federal Rule of Civil Procedure 7.1 and Local Civil Rule 7.1. Dkt. No. 35 at 4. Defendants Tesserae and Erpizo subsequently filed their amended corporate disclosures. Dkt. Nos. 36, 37.

On January 21, 2025, Plaintiff filed a SAC. Dkt. No. 38. The SAC pleaded eight causes of action: (1) breach of contract, against Tesserae Defendants and Defendant Spears; (2) breach of the covenant of good faith and fair dealing, against all Defendants; (3) contractual

indemnification, against Tesserae Defendants and Defendant Spears; (4) negligent misrepresentation, against Tesserae Defendants and Defendant Spears; (5) negligence, against Tesserae Defendants and Defendant Spears; (6) unfair competition in violation of the WCPA, against all Defendants; (7) intentional misrepresentation, against Tesserae Defendants and Defendant Spears; and (8) unjust enrichment, against all Defendants. *See id.* ¶¶ 50–130. On February 4, 2025, Tesserae Defendants moved to dismiss. Dkt. No. 40. On May 1, 2025, the Court granted in part and denied in part the motion. Dkt. No. 44.

The Court's Order was somewhat complicated. However, for the purposes of resolving the instant motion—where Tesserae Defendants seek only to dismiss certain claims against Defendant Drishpon—what is relevant is the Court's treatment of the SAC's allegations against Defendant Drishpon. In ruling on Tesserae Defendants' motion to dismiss the SAC, the Court dismissed the claims for breach of contract and breach of the covenant of good faith and fair dealing without prejudice, finding that Plaintiff had failed to adequately plead a theory of liability based on piercing Defendant Tesserae's corporate veil. *See id.* at 13–17, 32. The Court dismissed the contractual indemnification claim with prejudice. *Id.* at 32. The Court dismissed the negligence claim without prejudice, finding that Plaintiff had not adequately established that Defendant Drishpon owed Plaintiff a duty. *See id.* at 25. And the Court dismissed the claims for negligent misrepresentation and intentional misrepresentation without prejudice, finding that Plaintiff's pleading had not satisfied the heightened pleading standard of Federal Rule of Civil Procedure 9(b) with regard to particularity. *See id.* at 24–25. The Court advised Plaintiff of these deficiencies. Plaintiff's claim of unjust enrichment against Defendant Drishpon survived Tesserae Defendants' motion. *See id.* at 29–30.

On May 30, 2025, Plaintiff filed a TAC. Dkt. No. 48. The TAC alleged six causes of action: (1) breach of contract, "against Tesserae and its alter-egos, Drishpon and Spears";

(2) breach of the covenant of good faith and fair dealing, "against Tesserae and its alter egos, Drishpon and Spears"; (3) negligence, against Defendants Spears and Drishpon; (4) negligent misrepresentation, against Defendants Spears and Drishpon; (5) intentional misrepresentation, against Defendants Spears and Drishpon; and (6) unjust enrichment, against Defendants Drishpon, Spears, and Erpizo. *See id.* ¶¶ 71–121.

On June 13, 2025, Tesserae Defendants filed the instant motion to dismiss, seeking dismissal of the first five claims, as against Defendant Drishpon, under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 50 at 6. Plaintiff opposes the motion. *See* Dkt. No. 51.

## II.   LEGAL STANDARD

A defendant may seek dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion to dismiss, the Court takes all well-pleaded factual allegations as true and considers whether the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 672. When reviewing a dismissal pursuant to Rule 12(b)(6), "we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff[], the non-moving party." *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (alteration in original) (quoting *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).

Under Rule 9(b), a defendant may seek dismissal where a plaintiff fails to plead "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Vess v.*

ORDER ON MOTION TO DISMISS THIRD AMENDED COMPLAINT – 7

*Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (deeming a motion to dismiss under Rule 9(b) "the functional equivalent" of a motion to dismiss under Rule 12(b)(6) and thus treating dismissal under both rules "in the same manner"). Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), but a plaintiff must normally plead "'the who, what, when, where, and how' of the misconduct charged," *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess*, 317 F.3d at 1106).

### III.    DISCUSSION

### A.    Incorporation by Reference

On a motion to dismiss, a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). Under incorporation by reference, a court may "consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). A document may be incorporated by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908.

Here, Tesserae Defendants suggest that the TAC[1] incorporates by reference the August 15, 2022, Service Agreement between Defendant Tesserae and Plaintiff. *See* Dkt. No. 50 at 7 n.1.

---

[1] Perhaps relying on the previous iteration of their Motion, Tesserae Defendants refer to the superseded "Second Amended Complaint" when discussing the pleading's incorporation by reference of the Service Agreement, and they note that the Service Agreement is attached to their motion as Exhibit A. Dkt. No. 50 at 7 & n.1. The Court presumes that the reference to the Second Amendment Complaint is an oversight, and that Tesserae Defendants

The Court finds that the TAC "refers extensively" to Plaintiff's contract with Defendant Tesserae such that the contract is incorporated by reference into the pleading. The contract forms the basis of Plaintiff's first and second causes of action. *See* Dkt. No. 48 ¶¶ 73, 79. Tesserae Defendants refer to the contract and quote from it extensively in their Motion (*see, e.g.*, Dkt. No. 50 at 15–17), and Plaintiff discusses the contract in its response (*see, e.g.*, Dkt. No. 51 at 6–8). Given the Parties' substantial discussion of the contract in their motion practice, it is clear that the contract is relevant. Moreover, Plaintiff does not question the authenticity of the reproduction of the contract that Tesserae Defendants have provided at Docket No. 40-1. In sum, all of the conditions for incorporation by reference have been satisfied. *See Coto Settlement*, 593 F.3d at 1038.

Therefore, the Court finds that it may consider the contents of the contract when adjudicating the instant motion to dismiss, without converting the motion to dismiss into a motion for summary judgment.

**B.      Applicable Law**

"A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits." *Atl. Marine Constr. Co. v. United States Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 65 (2013). Therefore, Washington choice-of-law rules apply here. *See, e.g.*, *Marshall v. Hipcamp Inc.*, 735 F. Supp. 3d 1283, 1291 (W.D. Wash. 2024) (applying Washington choice-of-law rules in diversity case).

**1.      Contract Claims**

In Washington, "[a]n express choice of law clause in a contract will be given effect, as expressing the intent of the parties, so long as application of the chosen law does not violate the

mean to say "Third Amended Complaint." And although Tesserae Defendants attached the contract as Exhibit A to their prior motion to dismiss (Dkt. No. 40-1), they did not do so here.

fundamental public policy of [Washington]." *McGill v. Hill*, 31 Wn. App. 542, 547, 644 P.2d 680 (1982). Here, the contract between Plaintiff and Defendant Tesserae includes a choice-of-law clause that provides that it "shall be deemed to be a contract under the laws of the State of Georgia," and elaborates, "the construction, interpretation and performance of this Agreement and all transactions hereunder shall be governed by the laws of the State of Georgia." Dkt. No. 40-1 at 10. Further, Tesserae Defendants assert in their motion that Plaintiff's contract with Defendant Tesserae is governed by Georgia law (Dkt. No. 50 at 8 n.2), and Plaintiff does not dispute this assertion. Therefore, Georgia law applies to the first (breach of contract) and second (breach of the covenant of good faith and fair dealing) causes of action.

### 2.    Tort Claims

In the Ninth Circuit, "[c]laims arising in tort are not ordinarily controlled by a contractual choice of law provision." *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992). "Rather, they are decided according to the law of the forum state." *Id.*; *see Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1127 (W.D. Wash. 2010) ("In Washington, a 'choice of law provision in a contract does not govern tort claims arising out of the contract.'" (quoting *Haberman v. Washington Pub. Power Supply Sys.*, 109 Wn.2d 107, 159, 744 P.2d 1032 (1987))).

"The Washington Supreme Court has noted several principles that serve as a starting point for the choice of law analysis." *Bayley Constr. v. Wausau Bus. Ins. Co.*, No. C12-1176, 2012 WL 12874163, at *3 (W.D. Wash. Dec. 19, 2012). These principles are:

> 1.    *[T]he normal expectation should be that the rule of decision will be supplied by the domestic law as a matter of course.*
>
> 2.    The court should ordinarily depart from this procedure only at the instance of a party wishing to obtain the advantage of a foreign law.

ORDER ON MOTION TO DISMISS THIRD AMENDED COMPLAINT – 10

> 3.  The law of the forum, as the source of the rule of decision, should normally be displaced only by the interested party's timely invocation of the foreign law. The interested party invokes the foreign law by calling attention to its relevance and its superior claim to be applied, and by informing the court of its tenor.

*Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 100, 864 P.2d 937 (1994). Here, "[b]ecause Washington is the forum state, its law is applied unless the interested party, in a timely manner, invokes foreign law." *Perry v. HAL Antillen NV*, No. C12-850, 2013 WL 2099499, at *11 n.9 (W.D. Wash. May 14, 2013). Tesserae Defendants apply Washington law to Plaintiff's tort claims (*see* Dkt. No. 50 at 18–23), and Plaintiff does not object. Therefore, the Court applies Washington law to Plaintiff's third (negligence), fourth (negligent misrepresentation), and fifth (intentional misrepresentation) causes of action.

Plaintiff's sixth cause of action, for unjust enrichment, is not at issue in Tesserae Defendants' motion. *See* Dkt. No. 50 at 6.

**C.    Causes of Action**

Tesserae Defendants seek to dismiss Counts I, II, III, IV, and V against Defendant Drishpon. *See id.* The Court will first address Counts I and II, which sound in Georgia contract law, then Counts III, IV, and V, which sound in Washington tort law.

**1.    Contract Claims**

**a.    Piercing the Corporate Veil/Alter Ego Doctrine**

Because Defendant Drishpon is not party to the contract, Plaintiff seeks to hold him liable for Defendant Tesserae's alleged breaches by piercing Defendant Tesserae's corporate veil under an "alter ego" theory. *See* Dkt. No. 48 ¶¶ 72, 78. Under Georgia law, piercing the corporate veil is not undertaken capriciously. "A court should disregard the corporate form with great caution."

ORDER ON MOTION TO DISMISS THIRD AMENDED COMPLAINT – 11

*Graham v. Palmtop Props., Inc.*, 645 S.E.2d 343, 346 (Ga. Ct. App. 2007) (citing *Farmers Warehouse of Pelham v. Collins*, 137 S.E.2d 619, 625 (Ga. 1964)). Under Georgia law,

> the alter ego doctrine applies only if three requirements are met. Specifically, . . . "it must be shown [1] that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; [2] that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and [3] to adhere to the doctrine of corporate entity would promote injustice or protect fraud."

*Dearth v. Collins*, 441 F.3d 931, 934 (11th Cir. 2006) (alteration in original) (quoting *McClean v. Cont'l Wingate Co.*, 442 S.E.2d 276, 279 (Ga. Ct. App. 1994)). Procedurally, as the Court stated in its prior order, "a party pleading alter ego must satisfy the heightened pleading standard of Rule 9(b)." Dkt. No. 44 at 15 (quoting *Hadnagy v. Moss*, No. C23-1932, 2024 WL 1328568, at *6 (W.D. Wash. Mar. 28, 2024)).[2]

Plaintiff does not adequately plead the second element, unity of interest. Unity of interest and ownership is present where "the separate personalities of the corporation and the owners no longer exist[.]" *Sheppard v. Tribble Heating & Air Conditioning, Inc.*, 294 S.E.2d 572, 573 (Ga. Ct. App. 1982). But "[t]he mere fact that a person owns and controls a corporation will not justify a finding of abuse of the corporate entity, even though that person may have used the corporation to promote his own ends." *United States v. Fidelity Capital Corp.*, 920 F.2d 827, 837 (11th Cir. 1991) (applying Georgia law). Tesserae Defendants assert that Plaintiff's allegations

---

[2] In moving to dismiss Plaintiff's SAC, Tesserae Defendants argued that, when pleading a claim under a veil-piercing alter-ego theory, a plaintiff must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See* Dkt. No. 40 at 10–11. Plaintiff did not argue otherwise in its response brief, opting instead to oppose Tesserae Defendants' motion by asserting that the claims in the SAC were sufficient under Rule 9(b). *See* Dkt. No. 41 at 14. When the Court ruled on Tesserae Defendants' motion, it applied Rule 9(b)'s heightened standard to Plaintiff's alter-ego-based claims. *See* Dkt. No. 44 at 15–16. Here, absent any argument from Plaintiff that its claims are not governed by Rule 9(b), the Court will continue to apply the heightened pleading standard here. *But see Van v. LLR, Inc.*, 500 F. Supp. 3d 927, 935 (D. Alaska 2020) (finding that law-of-the-case doctrine did not preclude plaintiff from arguing that amended complaint was governed by Rule 8, not Rule 9(b)).

regarding unity of interest and ownership are conclusory. "These allegations are merely conclusions without any supporting factual basis and thus do not support an alter ego claim." Dkt. No. 50 at 11–12. The Court agrees. Plaintiff alleges incompetency and unethical conduct on Defendant Tesserae's part, then attempts to shoehorn such conduct into an alter-ego theory of liability for Defendant Drishpon. But, as explained below, neither set of allegations amounts facts that would establish the requisite unity of interest.

As to incompetence, Plaintiff alleges, in essence, that Defendant Drishpon mismanaged Defendant Tesserae into oblivion. But doing a job badly—even catastrophically badly—does not, without additional information, equate to doing it illegally or fraudulently, and the TAC does not sufficiently provide that additional information. *See Fidelity Capital Corp.*, 920 F.2d at 839 ("We agree that Fidelity had made poor investment decisions and suffered financial reverses that caused it to become insolvent; this is not, however, a reason to disregard the corporate entity.").

As to unethical conduct, to the extent that Plaintiff alleges that Defendant Tesserae conducted its business unscrupulously (*see* Dkt. No. 48 ¶¶ 60–66), Plaintiff provides insufficient basis to connect the alleged misconduct to an alter-ego theory of liability. Plaintiff has not alleged anything to suggest "commingling of money," *NEC Techs., Inc. v. Nelson*, 478 S.E.2d 769, 775 (Ga. 1996); or that Defendant Tesserae "w[as] used primarily to carry out the personal business of" Defendant Drishpon, *Otero v. Vito*, No. C07-405, 2009 WL 3063426, at *2 (M.D. Ga. Sept. 22, 2009); or "corporate insolvency at the time of the transaction," *Ralls Corp. v. Huerfano River Wind, LLC*, 27 F. Supp. 3d 1303, 1329 (N.D. Ga. 2014). Without the presence of any of these indicia of alter-ego, the Court cannot conclude that Defendant Drishpon abused the corporate form.

Plaintiff alleges that Defendant Tesserae "lacked an independent corporate identity" (Dkt. No. 48 ¶ 65), but Plantiff's allegations are insufficiently pleaded. Plaintiff alleges that, "[o]n information and belief, Tesserae had no meaningful business operations or assets apart from those contributed or managed directly by Drishpon and Spears and wrongfully obtained from [Plaintiff]." *Id.* ¶ 57. "Generally, 'information and belief' allegations do not satisfy the degree of particularity required under Rule 9(b)." *Villanueva v. Liberty Acquisitions Servicing, LLC*, 215 F. Supp. 3d 1045, 1055 (D. Or. 2016) (citation modified). Even so, "the rule is relaxed . . . in situations where the plaintiff could not be expected to have personal knowledge of the facts constituting the wrongdoing. In such cases Rule 9(b) is satisfied by a statement of the facts upon which the belief is grounded." *Id.* at 1055–56; *see also Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (stating that to satisfy the particularity requirements of Rule 9(b), "a plaintiff who makes allegations on information and belief must state the factual basis for the belief") (collecting cases). Here, however, the TAC includes no statement of facts that points to the derivation of Plaintiff's "information and belief." Put another way, where an information-and-belief allegation indicates that Plaintiff harbored a kernel of knowledge about something, Plaintiff must explain how it formed that kernel to elevate it above a mere supposition. But Plaintiff has not done so.

The remainder of Plaintiff's allegations are simply conclusory, too vague, or not indicative of an alter-ego relationship.[3] Plaintiff alleges, for example, that "Drishpon and Spears used Tesserae as a shell to enter into obligations, receive payments, and avoid liability, not only to [Plaintiff] but to Nextworld." Dkt. No. 48 ¶ 59. But referring to a company as a "shell" is simply a re-wording of an alter-ego allegation. *See Gerritsen v. Warner Bros. Ent. Inc.*, 112 F.

---

[3] Plaintiff has requested that the Court "not consider [the] allegation" in Paragraph 58 of the TAC. Dkt. No. 51 at 7 n.2.

Supp. 3d 1011, 1039 (C.D. Cal. 2015) (finding allegation that entities "have been and continue to be shell corporations" is conclusory). And Plaintiff's references to the relationship between Defendant Erpizo and Defendant Tesserae (*see, e.g.*, Dkt. No. 48 ¶¶ 62–64) may suggest something rotten, but simply alleging that the Tesserae Defendants "funneled new business to Erpizo" is, without more factual detail—what specific business, for example, and how and when it was diverted from one entity to the other—insufficient to satisfy the particularity requirements of Rule 9(b). Nor, for that matter, do such allegations necessarily point to an alter-ego theory of liability. After all, based on the allegations, as pleaded, the beneficiary of the purportedly improper transfer of assets from Defendant Tesserae to Defendant Erpizo appears to have been Defendant Erpizo, not Defendant Drishpon. *See* Dkt. No. 48 ¶ 48. And the "sole member" of Defendant Erpizo is Defendant Spears, not Defendant Drishpon. *Id.* ¶ 13c. Without a clearer connection between Defendant Erpizo and Defendant Drishpon, the transfer of assets or business from one company to the other does not, as Plaintiff asserts, demonstrate that "there can be no clearer unity of interest" than that between Defendant Tesserae and Defendant Drishpon. Dkt. No. 51 at 7.

Therefore, the Court finds that Plaintiff has not sufficiently pleaded an alter-ego theory of liability.

### b.     First Cause of Action: Breach of Contract

Tesserae Defendants assert that this claim fails, as against Defendant Drishpon, because Defendant Drishpon is not a party to the Contract and because Plaintiff's attempt to proceed on an alter-ego theory of liability fails. The Court has discussed the unviability of the alter-ego theory.

"Under Georgia contract law, the doctrine of privity of contract requires that only parties to a contract may bring suit to enforce it." *Murray v. ILG Techs., LLC*, 378 F. Supp. 3d 1227,

ORDER ON MOTION TO DISMISS THIRD AMENDED COMPLAINT – 15

1237 (S.D. Ga. 2019) (citing *Wirth v. Cach, LLC*, 685 S.E.2d 433, 434 (Ga. Ct. App. 2009)). By the same token, "[i]t is axiomatic that a person who is not a party to a contract is not bound by its terms." *Kaesemeyer v. Angiogenix, Inc.,* 629 S.E.2d 22, 25 (Ga. Ct. App. 2006) (citing *Martin v. Pierce*, 232 S.E.2d 170 (Ga. Ct. App. 1977)).

Here, although Defendant Drishpon signed the contract on behalf of Defendant Tesserae (*see* Dkt. No. 40-1 at 11), the parties to the contract were Defendant Tesserae and Plaintiff (*see id.* at 3). Beyond Plaintiff's assertions that Defendant Drishpon was an alter ego of Defendant Tesserae, Plaintiff does not allege any facts to indicate that Plaintiff was in privity of contract with Defendant Drishpon, or that Defendant Drishpon was individually bound by the terms of the contract such that he could be personally liable for its breach. Indeed, aside from re-asserting its alter-ego argument, Plaintiff offers no opposition to Tesserae Defendants' arguments regarding dismissal of the breach-of-contract against Defendant Drishpon. *See* Dkt. No. 51 at 8. Because the Court has rejected Plaintiff's alter-ego theory of liability, the Court necessarily must dismiss Plaintiff's breach-of-contract claim as against Defendant Drishpon.

### c.    Second Cause of Action: Breach of the Covenant of Good Faith and Fair Dealing

The Court treats Plaintiff's claim of breach of the covenant of good faith and fair dealing similarly. Under Georgia law, "[t]here is no independent cause of action for violation of good faith and fair dealing in the performance of a contract apart from breach of an express term of the contract." *Bankston v. RES-GA Twelve, LLC*, 779 S.E.2d 80, 82 (Ga. Ct. App. 2015) (citation modified). Put differently, where there is no claim for breach of contract, there is no claim for breach of the covenant of good faith and fair dealing. *See id.* Therefore, because Plaintiff has no breach-of-contract claim against Defendant Drishpon, Plaintiff also has no claim for breach of the covenant of good faith and fair dealing. *See Gladney ex rel. Gladney v. Consumers Credit*

*Union*, No. 23-13959, 2024 WL 2797914, at *5 (11th Cir. May 31, 2024) (applying Georgia law and finding failure to allege breach of contract necessarily meant a failure to allege "breach of the duty of good faith and fair dealing under that contract").

Therefore, the Court must dismiss Plaintiff's claim for breach of the covenant of good faith and fair dealing as against Defendant Drishpon.

**2.      Tort Claims**

As a preliminary matter, the tort claims—for negligence, negligent misrepresentation, and intentional misrepresentation—are subject to the heightened pleading standards of Rule 9(b). "When the facts underlying a negligence claim are also 'said to be part of a fraud claim,' the negligence claim sounds in fraud." *In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1278 (E.D. Wash. 2007) (quoting *Wagner v. First Horizon Pharm Corp.*, 464 F.3d 1273, 1278 (11th Cir. 2006)). Here, it is clear that, as pleaded, the core of the negligence claim is misrepresentation and/or fraud—i.e., that Defendant Drishpon said something untrue and induced Plaintiff to rely on that statement. *See* Dkt. No. 48 ¶¶ 88–91. "Because such a showing sounds in fraud, even if the claim is for negligent misrepresentation, these allegations must meet Rule 9's heightened pleading standard." *Unimax Commc'ns LLC v. T-Mobile USA Inc.*, No. C23-1830, 2024 WL 4417495, at *4 (W.D. Wash. Oct. 4, 2024).

**a.      Third Cause of Action: Negligence**

Under Washington law, there are four elements in a claim for negligence: "(1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause." *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008) (quoting *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 48, 914 P.2d 728 (1996)). Here, Plaintiff's failure to adequately allege the first element is fatal to its claim.

In the TAC, Plaintiff alleges that Defendant Drishpon "owed [Plaintiff] a duty of care because [he] personally engaged in conduct that created a foreseeable risk of harm to [Plaintiff], as described in Paragraphs 20–24 and 37–38" of the TAC. Dkt. No. 48 ¶ 87. Tesserae Defendants disagree. First, Tesserae Defendants assert that Plaintiff "fails to allege sufficient facts to establish that Drishpon owed any duty to Plaintiff at all, let alone in his personal capacity." Dkt. No. 50 at 18. Second, Tesserae Defendants argue that "Washington law does not recognize a general duty of care owed by an individual acting in their capacity as an officer of a corporation to refrain from causing foreseeable harm to another." *Id.*

The Court agrees with Tesserae Defendants. Plaintiff identifies the source of Defendant Drishpon's duty as his "engag[ing] in conduct that created a foreseeable risk of harm to [Plaintiff] as described in Paragraphs 20–24 and 37–38 of [the TAC]." Dkt. No. 48 ¶ 87. The Court fails to see how the information alleged in these paragraphs created a *personal* duty that Defendant Drishpon owed to Plaintiff in what is best characterized as an arm's-length business negotiation between Defendant Tesserae and Plaintiff. Paragraphs 20 through 22 describe statements that Defendant Drishpon made to Plaintiff while negotiating Defendant Tesserae's contract with Plaintiff. Paragraph 23 describes Defendant Drishpon's professional biography, as he presented it to the public in October 2023, and Paragraph 24 alleges that Plaintiff 'reasonably relied on Drishpon's representations" in that biography, as well as "his standing in the flooring industry." Paragraphs 37 and 38 describe a "problem[atic]" relationship between Defendant Tesserae and Nextworld.

Importantly, the language of the TAC makes clear that Defendant Drishpon was not acting individually here, but rather as Defendant Tesserae's agent. For one thing, Plaintiff alleges as much: "On or about May 6, 2022 and July 8, 2022, Drishpon, acting as CEO of Tesserae, . . . made affirmative statements to [Plaintiff] that Tesserae was capable of delivering and

implementing a workable ERP software solution built on the Nextworld platform." Dkt. No. 48 ¶ 95. And beyond Plaintiff's assertion, the substance of the allegations bears out this agent–principal relationship. For example, Plaintiff alleges that on July 8, 2022, Defendant Drishpon wrote in an email: "I believe *we* are in sync with your vision for Surface Art and can impact the industry together. The support you will receive from *our* partners and *us* will ensure that no matter the economic conditions, this will be a profitable decision and add value to the company." Dkt. No. 48 ¶ 21 (emphasis added). It is apparent that Defendant Drishpon is speaking on behalf of his company and is making representations in his capacity as the CEO. He is not promising that *he* will do anything.

Plaintiff, for that matter, appears to have recognized as much. Plaintiff alleges that in July 2022, it sent "detailed questions" to Defendant Drishpon, which inquired into "Tesserae's ability to provide" certain functions that Plaintiff needed in its ERP platform. *Id.* ¶ 22. Defendant Drishpon "provided responses, including a detailed email on July 19, 2022, promising that all of these items . . . would be successfully implemented during implementation." *Id.* As described in the TAC, then, Defendant Drishpon provided Plaintiff with information about *Defendant Tesserae*'s abilities. Given that Defendant Drishpon was engaging in negotiations that ultimately led to the formation of a contract between Plaintiff and Defendant Tesserae, the Court concludes that Defendant Drishpon was acting in his capacity as Defendant Tesserae's agent.

Assuming, *arguendo*, that Defendant Drishpon's conduct created a duty of care that *Defendant Tesserae* owed to Plaintiff—and, to be clear, the Court does not definitively conclude this one way or the other—the question is whether such conduct could have also created a duty of care that *Defendant Drishpon* owed to Plaintiff. Washington law counsels against such a finding. In *Annechino v. Worthy*, the Washington Supreme Court observed, "The cases where we have found officers personally liable for the torts of corporations involved officers who either

ORDER ON MOTION TO DISMISS THIRD AMENDED COMPLAINT – 19

knowingly committed wrongful acts or directed others to do so knowing the wrongful nature of the requested acts." 175 Wn.2d 630, 637, 290 P.3d 126 (2012).

Here, Plaintiff has not presented any facts that indicate that Defendant Drishpon *knowingly* did anything wrong such that Defendant Tesserae's liability would redound to him. Plaintiff does not make any allegations that, between May 6, 2022, and July 19, 2022—the time period during which Defendant Drishpon allegedly "engaged in conduct that created a foreseeable risk of harm to [Plaintiff]" (Dkt. No. 48 ¶¶ 20–24, 37–38, 87)—Defendant Drishpon *knew* that the assurances he was making to Plaintiff were false. Plaintiff alleges that "by early 2023, Tesserae and Nextworld were already having problems with their own working relationship." Dkt. No. 48 ¶ 37. This is *after* Defendant Drishpon vouched for Defendant Tesserae's capabilities. Moreover, the allegation does not assign to Defendant Drishpon any personal knowledge of these "problems" between Defendant Tesserae and Nextworld, nor does it explain what these problems might have been, and why they should have been recognized as fatal to Defendant Tesserae's contractual relationship with Plaintiff. Plaintiff's further allegation that "Tesserae knew there were problems with its relationship with Nextworld which would lead to Tesserae separating from Nextworld" (*id.* ¶ 38) is similarly deficient in these regards.

Therefore, the Court finds that Plaintiff has not sufficiently alleged the existence of a duty that Defendant Drishpon owed it. Plaintiff's claim for negligence, as against Defendant Drishpon, must be dismissed.

        **b.**      **Fourth and Fifth Causes of Action: Negligent Misrepresentation and Intentional Misrepresentation**

Plaintiff's claims against Defendant Drishpon for negligent misrepresentation and intentional misrepresentation do not meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).

ORDER ON MOTION TO DISMISS THIRD AMENDED COMPLAINT – 20

In Washington, there are seven elements of a claim of negligent misrepresentation:

> (1) [T]he defendant supplied information for the guidance of another in his or her business transactions, (2) the information was false, (3) the defendant knew or should have known that the information was supplied to guide the plaintiff in his or her business transactions, (4) the defendant was negligent in obtaining or communicating the false information, (5) the plaintiff relied on the false information, (6) the plaintiff's reliance was reasonable, and (7) the false information proximately caused the plaintiff damages.

*Repin v. State*, 198 Wn. App. 243, 278, 392 P.3d 1174 (2017) (citing *Ross v. Kirner*, 162 Wn.2d 493, 499, 172 P.3d 701 (2007)).

There are nine elements of a claim of intentional misrepresentation:

> (1) representation of an existing fact, (2) materiality, (3) falsity, (4) the speaker's knowledge of its falsity, (5) intent of the speaker that it should be acted upon by the plaintiff, (6) plaintiff's ignorance of its falsity, (7) plaintiff's reliance on the truth of the representation, (8) plaintiff's right to rely upon the representation, and (9) damages suffered by the plaintiff.

*Poulsbo Grp., LLC v. Talon Dev., LLC*, 155 Wn. App. 339, 345–46, 229 P.3d 906 (2010) (quoting *W. Coast, Inc. v. Snohomish County*, 112 Wn. App. 200, 206, 48 P.3d 997 (2002)).

As pleaded in the TAC, the Court discerns two separate "phases" of purported misrepresentation here—*pre*-contract formation, in which Defendant Drishpon made statements and assurances that appear to have induced Plaintiff to enter into the contract with Defendant Tesserae; and *post*-contract formation, in which Defendant Drishpon made overly optimistic statements about Defendant Tesserae's ability to perform its contractual obligations and, as near as the Court can tell, induced Plaintiff to adhere to its own contractual obligations. *See* Dkt.

No. 40-1 at 3.[4] As to the pre-contract formation phase, as discussed above, Plaintiff has not alleged that Defendant Drishpon personally owed Plaintiff any duty; Defendant Drishpon was acting as Defendant Tesserae's agent during contract negotiations. Defendant Drishpon cannot be held personally liable for his allegedly tortious conduct.

As to the post-contract formation phase, three paragraphs from the TAC describe the alleged misrepresentations:

> 96. SPEARS and DRISHPON repeatedly and constantly assured SURFACE ART that TESSERAE would deliver the promised services, even when SURFACE ART began to express serious concerns about TESSERAE's ability to perform under the contract.
>
> 97. In weekly conference calls with SURFACE ART and Nextworld which occurred through the spring and summer of 2023, DRISHPON and SPEARS personally continued to represent that development was on track, that key technical milestones had been met, and that resources were in place to deliver the promised product to SURFACE ART.
>
> . . .
>
> 102. SPEARS and DRISHPON assured SURFACE ART that TESSERAE would be able to adequately provide services to SURFACE ART, even when they knew or should have known that the relationship with Nextworld could not continue. But neither SPEARS nor DRISHPON conveyed that to SURFACE ART, and SURFACE ART was not provided the benefit of their knowledge.

Dkt. No. 48 ¶¶ 96–97, 102. The allegations in Paragraph Nos. 96 and 102 are simply not made with sufficient particularity. A plaintiff does not need to provide verbatim recitations of the alleged misrepresentations to satisfy Rule 9(b), but its pleaded allegations must be "sufficiently specific." *Bilodeau v. McAfee, Inc.*, No. C12-4589, 2013 WL 3200658, at *9 (N.D. Cal. June 24,

---

[4] Alternatively, Plaintiff's allegations could be read as implying the somewhat shaky position that Defendant Drishpon should have advised Plaintiff against adhering to its own contractual obligations to "implement[]" the contracted-for product. *See* Dkt. No. 40-1 at 3. Tesserae Defendants do not make this argument, however, and the Court will not take it up.

ORDER ON MOTION TO DISMISS THIRD AMENDED COMPLAINT – 22

2013); *see also Lucas v. Int'l Bus. Machines Corp.*, No. C20-141, 2020 WL 4569461, at *6 (N.D. Cal. Aug. 7, 2020) ("A plaintiff need not provide verbatim quotations of purported misrepresentations to satisfy Rule 9(b); it is enough that Lucas has alleged the substance of IBM's alleged representations."). Plaintiff's allegations here are not sufficiently specific, and the pleading does not convey the substance of what was allegedly uttered. That is, the purported misrepresentations described in Paragraph Nos. 96 and 102 amount to little more than vague assurances that Defendant Tesserae would fulfill its contractual obligations. References to "[p]romised services" and to an ability to "adequately provide services" are generic; there must be more to a fraud allegation than an inexact assertion that the defendant didn't do what it said it was going to do.

As to the purported misrepresentations described in Paragraph No. 97, these are more specific. The allegations reference "key technical milestones" and note that Defendant Drishpon assured Plaintiff that "development was on track," and that "resources were in place to deliver the promised product." Dkt. No. 48 ¶ 97. These are by no means crystal clear, but they afford some degree of specificity beyond a general assurance of performance. However, Plaintiff's pleading still falls short, because Plaintiff does not provide anything more than a conclusory basis that Defendant Drishpon "was negligent in obtaining or communicating the false information" (for a claim of negligent misrepresentation); or that Defendant Drishpon knew that his representations were, in fact, false (for a claim of intentional misrepresentation).

Plaintiff's allegations in this regard amount to conclusory restatements of the elements of the cause of action: "At the time [he] made these statements, [Defendant Drishpon] had actual knowledge or acted in reckless disregard of the fact that TESSERAE would not be able to deliver the software, due to a rapidly deteriorating relationship with Nextworld, resource shortages, known technical flaws, *or* development issues." Dkt. No. 48 ¶ 98 (emphasis added). Moreover,

ORDER ON MOTION TO DISMISS THIRD AMENDED COMPLAINT – 23

Plaintiff's use of the disjunctive "or" here is telling, and it imbues the allegation with a substantial amount of uncertainty that renders it nearly meaningless. An assertion that presents four potentialities, any one of which could be true, is hardly illuminating. The assertions raise more questions than they provide answers. For example, which of these four exigencies—Defendant Tesserae's relationship with Netxtworld, resource shortages, technical flaws, or development issues—was actually responsible for the company's inability to deliver the software? And which of these four exigencies was Defendant Drishpon actually aware of (or recklessly indifferent to)? A sufficient allegation here would have answered both of these questions—for example, by specifying that resource shortages jeopardized Defendant Tesserae's ability to perform on the contract, and Defendant Drishpon was aware that there were resource shortages. Instead, Plaintiff presents the Court with four disparate potential sources of trouble, none of which is alleged to have been known by Defendant Drishpon as either existing or as contributing to his company's inability to perform on the contract. Simply put, the TAC does not sufficiently assert what Defendant Drishpon actually knew, or should have known, and why that knowledge would have—or should have—led him to the conclusion that Defendant Tesserae was not going to perform.

Absent this information, the TAC does not satisfy the particularity requirements of Rule 9(b). The negligent misrepresentation and intentional misrepresentation claims, as against Defendant Drishpon, must be dismissed.

**D.      Dismissal Without Prejudice**

Tesserae Defendants request that the Court dismiss the claims against Defendant Drishpon with prejudice, because "Plaintiff has had more than enough opportunity to offer *detailed* facts to support its claims[,] which they have repeatedly failed to do." Dkt. No. 50 at 6.

Plaintiff requests that, "[i]f the Court agrees with any portion of the arguments advanced by Defendants, Plaintiff [be given] leave to amend, yet again." Dkt. No. 51 at 11.

"Normally, when a viable case may be pled, a district court should freely grant leave to amend." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (citing *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002)). However, "a party is not entitled to an opportunity to amend his complaint if any potential amendment would be futile." *Mirmehdi v. United States*, 689 F.3d 975, 985 (9th Cir. 2012).

Plaintiff has submitted four pleadings in this case. *See* Dkt. Nos. 1 (complaint); 21 (FAC); 38 (SAC); 48 (TAC). The Court dismissed Plaintiff's FAC in its entirety because Plaintiff had failed to adequately establish the Court's subject-matter jurisdiction. *See* Dkt. No. 35 at 2–4. The SAC remedied this problem, but the Court dismissed that pleading's contractual claims, as pleaded against Defendant Drishpon, because Plaintiff had not adequately pleaded an alter-ego theory of liability. *See* Dkt. No. 44 at 16–17. The Court also dismissed the tort claims of the SAC, as pleaded against Defendant Drishpon, because Plaintiff did not meet Rule 9(b)'s heightened pleading requirements with respect to negligent misrepresentation and intentional misrepresentation and because, with respect to negligence, Plaintiff did not identify any duty that Defendant Drishpon owed Plaintiff. *See id.* at 24–25.

Although the Court recognizes that Plaintiff has had several opportunities to plead viable claims against Defendant Drishpon, the Court cannot conclude that further amendment would be futile. Plaintiff has had only one real opportunity—in the TAC—to cure the deficiencies in the SAC that the Court identified in is prior order. In the Ninth Circuit, denial of leave to amend may be considered after a party's "*repeated* failure to cure deficiencies by amendments previously allowed," *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (emphasis added), and there has been no such repetition here. In short, although Plaintiff's pleadings are

inadequate here, they are not so deficient as to render them lost causes. *See United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016) (finding district court abused its discretion when denying leave to amend, because plaintiff "might be able" to satisfy Rule 9(b) "through further amendment," and because the complaint had "allege[d] a cognizable legal theory" which indicated that "amendment would not be futile"); *see also de Lozano v. Nissan N. Am., Inc.*, No. C22-1887, 2023 WL 3432240, at *3 (C.D. Cal. Apr. 20, 2023) ("Plaintiff's Rule 9(b) pleading defects may likely be cured on amendment, thus Rule 9(b) does not render further amendment futile."). Therefore, dismissal with prejudice would be inappropriate here.

### IV.    CONCLUSION

Accordingly, Tesserae Defendants' motion to dismiss (Dkt. No. 50) is GRANTED. It is hereby ORDERED: Plaintiff's first, second, third, fourth, and fifth causes of action, as against Defendant Drishpon, are DISMISSED WITHOUT PREJUDICE.

Dated this 20th day of March, 2026.

Tana Lin
United States District Judge

ORDER ON MOTION TO DISMISS THIRD AMENDED COMPLAINT – 26